THE PEOPLE OF THE STATE OF NEW YORK ex rel. 379 MADISON AVENUE, INC., Respondent, against WILLIAM E. BOYLAND et al., Constituting the Tax Commission of the City of New York, Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. 1313 CORPORATION, Respondent, against WILLIAM E. BOYLAND et al., Constituting the Tax Commission of the City of New York, Appellants.

First Department, May 12, 1953.

*James J. McGowan* of counsel (*Morris Handel* with him on the brief; *Denis M. Hurley, Corporation Counsel*), for appellants.

*Philip Sheridan McNally* for respondents.

Bergan, J. Relators own two separate tax lots on which are erected twin office buildings occupying the square block on the east side of Madison Avenue between 46th and 47th Streets to Vanderbilt Avenue. The buildings are operated as a unit and it is convenient to treat together and in a unitary sense the tax assessments here under review.

The consolidated proceedings review assessments for five different tax years in the period from 1944 to 1949. The assessments made by appellants during this period varied somewhat, but the court at Special Term has reduced the total assessments for each of the years under review to $5,520,000 of which $3,115,000 has been attributed by the court to land and $2,405,000 to the improvements.

During the period embraced in this review changes have occurred which affect the value of this property. There have been physical improvements in the structures; their depreciated reconstruction costs have risen; there has been a sharp rise in the net income of the property; and there is proof that there exists in this area generally a consistent upward drift of real estate values.

The valuations fixed by the tax commission in large measure followed those changes and we think the orders in certiorari should be remolded to reflect them.

The buildings were erected in 1923; they have approximately 7,850,000 cubic feet and a net rentable area of 446,000 square feet. Additions and replacements were made in the structures from time to time, but during the latter part of the period here under review, beginning in February, 1947, more important changes were made.

The buildings were completely air-conditioned; plumbing equipment in lavatories was modernized throughout the structures; the passenger and freight elevators were changed from manually operated to automatic operations of the latest type, a process almost fully completed in 1949.

The proof of reproduction costs less depreciation for the structures showed a consistent rise from $3,245,840 in the period 1944–45 to $4,357,865 in the period 1948–49, a subject on which there is proof by the commission but none by the relators.

In the two-year period from 1945 to 1947 the income from the buildings for rent and services increased from $645,321 to $1,026,995; and what is more important the net income from the buildings increased nearly 60% from $329,115 to $575,407. In 1948 there was a small further increase in gross income over

1947, but there was also a small falling off of net income because of the increase in expenses.

These figures are derived from the analysis of earnings and expenses made from relators' books by the city's accountants. The proof by relators of the income for the year ending July 31, 1945, is in unsatisfactory form and is fragmented, but the net income of $329,155, reached by computations of the commission's accountants, as well as their figures for other years, eliminated items concerning the cost of capital, ground leases, and other items not properly deductible. The 1945 figure is assumed to be accurate in relators' brief for the purpose of pursuing another argument. But even if the relators' figures be accepted the increase in net earnings from 1945 to 1947 is very large in its proportions.

There is proof by the relators of ten different sales of Madison Avenue property at prices averaging 54% of the assessments, but not only were most of these made in 1944 or earlier, but the proof that the general trend of values in this area was upward during the period here under review is very persuasive, has been easily demonstrated and seems to us fairly obvious.

An expert witness described the immediate area as "the finest type commercial and retail area in the City of New York" and "the acme of perfection" for some types of shopping trade. In the more formal words of his written report the witness described the property as "located in the heart of the Grand Central District, featuring office buildings, hotels and high class retail establishments". The opinion of the expert that the Grand Central area "enjoys a continuous upward trend" is nowhere disputed. The buildings themselves are rented to tenants of importance and standing in the business world.

When the total assessment as fixed by the court at $5,520,000 for all the years reviewed is related to the net income for the year 1947, for instance, which reached $575,407, the assessment as fixed by the Special Term would result in a return of well over 10% on the assessed value.

Assessments cannot be made to trail behind every turn in the fortunes of real property. There are times when property must bear a share of taxation proportionate to value even though it may then have no income, or an income inadequately focused to true value. There are times when the full measure of ephemeral surges of increased income should not be reflected in assessments in fairness to the owner.

But income is one factor which a court must weigh into consideration in undertaking to review, and to revise, the judgment which assessing officers have applied to their tasks. When a general trend of increases in values for an area is shown; when there is proof both of actual physical improvements to the structures and marked increases in depreciated reconstruction costs; and, finally, when there are dramatic increases in net income which appear sustained rather than spasmodic, the changes reflected in the decision of the assessors should be reflected also in the order of the court.

The order should be modified by reinstating the assessments for 1944–1947 of $6,100,000 and for the years 1947–1949 by fixing the assessments at $6,100,000 in the amounts that had been set by the assessors for land and improvements respectively, for the years 1946–1947 and as thus modified, the orders should be affirmed, with $20 costs to appellants.

PECK, P. J., GLENNON and VAN VOORHIS, JJ., concur. DORE, J., concurs in result.

Order unanimously modified in accordance with the opinion herein and, as so modified, affirmed, with $20 costs and disbursements to the appellants. Settle order on notice.