THE PEOPLE OF THE STATE OF NEW YORK ex rel. LORING R. GALE et al., Appellants, *v.* TAX COMMISSION OF THE CITY OF NEW YORK, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. OXFORD PROPERTIES, INC., Appellant, *v.* TAX COMMISSION OF THE CITY OF NEW YORK, Respondent.

First Department, November 8, 1962.

*Harry H. Chambers* of counsel (*Edward H. Helmeke* with him on the brief; *A. I. Madison* and *Lynton, Klein, Opton & Saslow,* attorneys), for appellants.

*James J. McGowan* of counsel (*Edward J. McLaughlin* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for respondent.

EAGER, J. The relators appeal from a final order reducing real estate tax assessments for the tax years 1951–52 through 1954–55 on real property located at 2880 Broadway (northeast corner of Broadway and 112th Street), Borough of Manhattan, City of New York. The property is improved with a seven-story former luxury-type apartment house now converted to a furnished rooming house type of occupancy above the ground floor which is occupied by seven retail stores of various kinds.

Oxford Properties, Inc., the present owner of the property, became at first, in 1934, a lessee thereof under a lease for a term of 21 years at a fixed annual rental of $36,000. The lease gave the tenant an option for a 21-year renewal at the same rental and, in accordance with such option, Oxford in 1954 renewed the lease for the additional 21-year term. The annual rental of $36,000, to which the property was then bound, had been agreed upon in 1934 at the time of a depression and, clearly, on present-day basis, this constitutes an extremely low rental for the premises.

In October, 1954, the then owners of the premises sold them to Oxford for the sum of $225,000. Obviously, however, the sales price was influenced and depressed by the existence of the renewal 21-year lease which bound the property until 1975 to the relatively low annual rental of $36,000.

It is the position of the relators here that the fixed low rental income and the 1954 sales price unquestionably establishes an assessable value in the property far below the value of $365,000 fixed at Special Term. Incidentally involved is the question of whether or not the assessment should have been limited to an assessment of the actual value of the owners' interest incumbered, as it was, by the outstanding 21-year lease.

By statute, it is provided that, "All real property subject to taxation shall be assessed at the full value thereof" (Tax Law, § 8, in effect until Oct. 1, 1959; now, Real Property Tax Law, § 306). These provisions are supplemented by the provisions of the Administrative Code of the City of New York which provide that the assessed valuation of an improved property shall be set down at "the sum for which such property would sell under ordinary circumstances with the improvements, if any thereon". (See Administrative Code, § 158–1.0.) The two statutes are to be read together, and the "statutory test of the full value of property is the price at which the property would sell under ordinary circumstances". (*People ex rel. Parklin Operating Corp.* v. *Miller,* 287 N. Y. 126, 129.)

It is well to bear in mind, however, that real property taxes are assessed on the basis of the full value of the property itself. In all cases the assessment is against the "real property itself" (Tax Law, § 9, in effect until Oct. 1, 1959; now, Real Property Tax Law, § 304), and the name of the owner, last-known owner, or reputed owner, if noted on the assessment roll, is entered merely in connection with the identification of property assessed. (See Real Property Tax Law, § 502, subd. 2; also *Matter of Doughty* v. *Loomis,* 9 A D 2d 574; *Smith* v. *Russell,* 172 App. Div. 793, 797; *Matter of Donner-Hanna Coke Corp.,* 212 App. Div. 338, 340, affd. 241 N. Y. 530.) "The pertinent statutes have to do with the assessment of land and improvements without reference to the identity, nature or extent of the ownership thereof. What is to be assessed is the whole of the property and the full value thereof regardless of restrictions personal to the owner. The resulting tax is on the real property; its consequence falls upon the owner whose personal disabilities and restraints neither lessen nor increase the amount. (*Paddell* v. *City of New York,* 50 Misc. 422, 424–425, affd. 114 App. Div. 911, affd. 187 N. Y. 552, affd. 211 U. S. 446.)" (*Matter*

*of Knickerbocker Vil.* v. *Boyland,* 16 A D 2d 223, 228; see, also, *Matter of Doughty* v. *Loomis, supra; Smith* v. *Russell, supra.*)

The tax levied is a tax upon the whole land, and not merely on the interest of a particular person therein. "Where the fee is privately owned, the real property tax attaches to the combined interests of all the parties interested in the land and the improvements thereon". (*New York Mobile Homes Assn.* v. *Steckel,* 9 N Y 2d 533, 539; see, also, *Donovan* v. *Haverhill,* 247 Mass. 69.) So, to comply with statutory provisions and to achieve the essential indiscriminate and full measure of taxation of real property as a whole, it is not generally proper or necessary that separate legal interests in a piece of property be independently assessed.

Except in case of easement interests,* a division of ownership or the independent holding of separate legal interests in taxable property will not affect the mode of assessment. For instance, mortgagor and mortgagee interests, vendor and vendee interests, landlord and tenant interests, life tenant and remainder interests and cotenant interests are not separately assessed. It was well settled at common law, unchanged by statute pertinent here, that the mortgagor, the vendee in posession, the lessor, the life tenant, or the cotenants jointly, were bound to pay the entire tax on the property as if there were no mortgage, contract of sale, lease, remainder or cotenant interests. (See 1 Bonbright, Valuation of Property, p. 496; 84 C. J. S., Taxation, §§ 95, 96, 98, 104; 59 C. J. S., Mortgages, § 324; 92 C. J. S., Vendor & Purchaser, § 290; 51 C. J. S., Landlord & Tenant, § 359; 31 C. J. S., Estates, § 47; 86 C. J. S., Tenancy in Common, § 67; see, also, *Wilson & Co.* v. *City of New York,*

---

* "Why the easement should have received the exceptional treatment we are unable to say" (34 Col. L. Rev. 1436 [1934]; 1 Bonbright, Valuation of Property, p. 497.) In any event, it is the settled rule that, where real property is subject to an easement, the value of the property for tax purposes is to be fixed bearing in mind the outstanding easement interest. The market value of the servient estate is lessened by virtue of its being subject to the easement and the value of the dominant estate is to be increased by virtue of having the benefit of the easement. (*Tax Lien Co.* v. *Schultze,* 213 N. Y. 9, 11; *Matter of Knickerbocker Vil.* v. *Boyland,* 16 A D 2d 223; also 1 Bonbright, Valuation of Property, p. 496; *Matter of Hall,* 116 App. Div. 729; *Beach Bungalows* v. *Bushwick Sav. Bank,* 133 N. Y. S. 2d 712.) This method of assessment, where there are easement interests, is fully in accord with the purpose and policy of the tax laws to subject real property to taxation upon its full value. The easement interest is thereby viewed in a proper perspective to achieve full and proper valuation of property for assessment purposes. This method is clearly justified on the basis that it places the easement where it belongs for tax lien and tax sale purposes, namely, severed from the servient estate and attached to the dominant estate.

73 N. Y. S. 2d 206, affd. 276 App. Div. 755.) Thus, in any case, a single assessment of the property, at its full value, as if not subject to a mortgage, a vendor interest, a lease, a remainder or cotenancy, is all that is required. "Whether these methods of assessment are to be explained on historical or on other grounds, is immaterial on the principles of valuation. They can be justified practically on the ground that the number of assessments is reduced to a fraction of what they would otherwise be, and also that difficult problems of allocation of values are avoided." (1 Bonbright, Valuation of Property, p. 497; 34 Col. L. Rev. 1436 [1934].)

Consequently, it is clear that, notwithstanding real property is subject to a long-term lease, there should be but a single assessment of the property without a separation of the interests of the lessor and lessee, and by statutory directive noted aforesaid, such assessment shall be at its full value.

*Matter of City of New York (Maxwell)* (15 A D 2d 153) is cited by the relators in support of a contention that, in the determination of the assessable value of their property, greater weight should have been given here to the rental income fixed by the outstanding lease and to the 1954 sales price. In our opinion there (p. 173) in discussing the bearing of a long-term rental contract on the value to be fixed for an owner's interest in eminent domain proceedings, we stated that, "We cannot visualize a willing buyer faced with this certain limitation of income paying a price based on a theoretical income to be realized in a future so distant that no prudent man would invest on the possibility of what it might bring "; and we limited the award to the owner to a sum realistically equivalent to the market value of the property subject, as it was, to the certain long period limitation of income. It is clear, however, that there may be a distinction between the value to be paid an owner in condemnation proceedings and the true value of property for assessment purposes. In the former case, we may be concerned with the appraisal only of the owner's interest in the property, and seek to ascertain the fair market value of his interest at the time of condemnation. On the other hand, in arriving at the true value for tax assessment purposes of real property subject to a lease, an appraisal is to be made of the property as a whole regardless of the effect of the lease upon the value of owner's interest.

An outstanding lease may be a benefit or a detriment to the subject property, and thus its duration, covenants and the rental fixed are simply elements along with many other considerations used to arrive at the value of the property. The amount of

rental fixed by a lease, even though negotiated at arm's length, could be very misleading, as to the true value of property, for it is well known that many rental contracts may be at excessive or inadequate rentals because of poor business judgment on the part of one party or another. Then, too, long-term rental contracts may be made in boom times or in times of depression, so do not necessarily reflect true value on a change in times. And, as Mr. Justice Bergan, sitting in this court, has very appropriately said, "Assessments cannot be made to trail behind every turn in the fortunes of real property. There are times when property must bear a share of taxation proportionate to value even though it may then have no income, or an income inadequately focused to true value. There are times when the full measure of ephemeral surges of increased income should not be reflected in assessments in fairness to the owner." (*People ex rel. 379 Madison Ave.* v. *Boyland,* 281 App. Div. 588, 590.)

Of course, an outstanding bona fide lease and the rental income established thereby are matters to be considered in determining " the full value " of the whole property, land and improvements. Value arrived at by capitalization of the fair rental value is, in ordinary cases, the surest guide to a sound appraisal. In that connection, the actual rent realized is significant as an important factor in determining what the fair rental value is. (See *People ex rel. Parklin Operating Corp.* v. *Miller,* 287 N. Y. 126, 129, 130, *supra; People ex rel. Manhattan Sq. Beresford* v. *Sexton,* 284 N. Y. 145, 149; *People ex rel. Luce* v. *Lewis,* 257 App. Div. 724.) But when there is evidence that factors such as long-term leases made under distress or boom conditions affect the actual rent, the weight to be given to the actual rent must be discounted accordingly. (See *People ex rel. 379 Madison Ave.* v. *Boyland,* 281 App. Div. 588, *supra; Matter of Dunn Garden Apts.* v. *Commissioner of Assessment,* 11 A D 2d 879; cf. *Ettlinger* v. *Weil,* 184 N. Y. 179, 183.)

So, the existence of an outstanding lease at an unrealistically low rental for a long term, not representing the fair rental value of the property, is not to be used as a basis for calculating actual value. Thus, the true value of the property for assessment purposes is to be ascertained as if unincumbered by such a lease. " It is plain a deduction of the surrender value of a long term lease from the market value of the estate, ascertained by a sale of the land free of the lease, in many instances would seriously impair the taxable valuation of the estate considered as a whole; and that the entire estate would escape taxation to the extent of the tax upon the value of the leasehold interest to the estate for the purpose of extinguishment. We do not think a deter-

mination of the fair cash valuation of real estate requires the assessors to make such a deduction." (*Donovan* v. *Haverhill,* 247 Mass. 69, 72, *supra*; see, also, *Richmond Fredericksburg & Potomac R. Co.* v. *Commonwealth,* 203 Va. 294.)

Insofar as *People ex rel. Phipps Estate* v. *Mills* (277 App. Div. 1105) is in disagreement with the conclusions here it should not be followed.

Finally, the evidence of the price paid at a bona fide sale during or reasonably near the tax years is not conclusive in determining the value of the property. It would only be one element for consideration to be weighed with all other relevant factors. (*People ex rel. Parklin Operating Corp.* v. *Miller,* 287 N. Y. 126, *supra*; *People ex rel. Four Park Ave. Corp.* v. *Lilly,* 265 App. Div. 68.) " ' [T]he time, the place, the circumstances and the conditions of the sale must be explored.' (*People ex rel. Four Park Ave. Corp.* v. *Lilly* [265 App. Div. 68, 71], *supra.*) ' [F]ew sales are made in accord with the theoretical standard of a willing buyer and a willing seller. Buyers are naturally prone to seeking bargains—opportunities to buy at a price that would give an unusually high return '. (*Matter of City of New York* [*Maxwell*] [15 A D 2d 162], *supra.*) " (*Matter of Guth Realty* v. *Gingold,* 16 A D 2d 372, 373.)

Here, the court in weighing the sales price of the property as evidence of value was bound to take into consideration the fact that the price was necessarily affected by the incumbrance upon the property of the outstanding long-term lease binding the owner to accept a rental fixed many years ago when rentals were at a comparatively low ebb. The sale subject to such a lease was not a sale under " ordinary circumstances " (see Administrative Code, § 158–1.0, *supra*; *People ex rel. Parklin Operating Corp.* v. *Miller, supra,* p. 129) and, so, the sales price here is not acceptable as a fair criterion of the present true value of the property for assessment purposes.

We conclude that, on the record, the findings at Special Term are in accordance with the law and are amply supported by the evidence. Therefore, the order appealed from should be affirmed, on the law and the facts, with costs to respondent.

BREITEL, J. P., RABIN, VALENTE and McNALLY, JJ., concur.

Order, entered on December 31, 1954, so far as appealed from, unanimously affirmed on the law and on the facts, with $20 costs and disbursements to the respondent.