188 N.J. Super. 34 (1982)
455 A.2d 1136
RODWOOD GARDENS, INC., PLAINTIFF-RESPONDENT,
v.
CITY OF SUMMIT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1982.
Decided December 29, 1982.
*36 Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Saul A. Wolfe argued the cause for defendant-appellant. (Skoloff & Wolfe, attorneys; Saul A. Wolfe, of counsel and on the briefs).
Leo Rosenblum argued the cause for plaintiff-respondent (Rosenblum & Rosenblum, attorneys; Leo Rosenblum of counsel and on the brief).
The opinion of the court was delivered by MILMED, P.J.A.D.
The City of Summit (city) appeals from a judgment of the Tax Court concerning local property assessments for the years 1976 through 1979 on certain real property owned by respondent Rodwood Gardens, Inc. (Rodwood).
*37 The property, situated at 412 Morris Avenue in Summit, consists of a tract of land, irregular in shape, approximately 330 feet by 500 feet, improved with a garden apartment complex consisting of 16 building sections built in the early 1950s and containing 57 apartment units. For each of the tax years under review, i.e., 1976 through 1979, the city assessed the property at values established in its revaluation program of 1970 and put into effect for the 1972 tax year, viz.,

 Land $239,400
 Improvements 585,600
 ________
 Total $825,000

On the taxpayer's appeals the 1976, 1977 and 1978 assessments were initially reviewed and sustained by the Union County Board of Taxation. The judgments of the county board for the three years were appealed by Rodwood to the Division of Tax Appeals, now the Tax Court. The 1979 assessment was appealed directly to the Tax Court pursuant to N.J.S.A. 54:3-21.
The four appeals were consolidated for hearing and, at the close of the proofs, the Tax Court judge who presided reserved decision. In a letter opinion which followed, the judge found: (1) "the true value of the subject property to be $1,051,000 for 1976, 1977 and 1979, and $1,059,000 for 1978, calculated under the income approach" and (2) Rodwood was entitled to discrimination relief for each of the four years. He, accordingly, directed the entry of judgments grounded on these findings and fixing the assessments as follows:

 For 1976 For 1977 For 1978 For 1979
 Land $239,400 $239,400 $239,400 $239,400
 Improvements 414,100 414,100 396,000 401,700
 ________ ________ ________ ________
 Total $653,500 $653,500 $635,400 $641,100

We reverse and direct the reinstatement of the original assessments of the subject property for each of the tax years under review. It is obvious from a review of the record that the *38 findings of the Tax Court judge are not supported by competent evidence and were arrived at in disregard of well settled principles of law governing the valuation and assessment of real property for taxation.
Each annual assessment and, a fortiori, each annual valuation, of property for taxation constitutes a separate entity, distinct from valuations and assessments of previous or subsequent years. See Tri-Terminal Corp. v. Edgewater, 68 N.J. 405, 413 (1975), cert. den. 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976); Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 103 (1952); In re East Orange Appeal, 103 N.J. Super. 109, 113 (App.Div. 1968); In re Kresge-Newark, Inc., 30 N.J. Super. 489, 496 (App.Div. 1954); N.J.S.A. 54:4-23. On appeal to the county tax board the assessment made by the local taxing authority is presumed to be correct. On further appeal to the Tax Court, a similar presumption attaches to the county board judgment. Thus, in the matters now before us, plaintiff, the appellant in the Tax Court, had the burden of ultimate persuasion to upset the judgments of the Union County Board of Taxation for the tax years 1976, 1977 and 1978 and the local assessment for the tax year 1979. See Aetna Life Ins. Co. v. Newark, supra, 10 N.J. at 105; Riverview Gardens v. North Arlington, 9 N.J. 167, 174-175 (1952); Glenwood Realty Co. Inc. v. East Orange, 78 N.J. Super. 67, 70 (App.Div. 1963).
As the court noted in Aetna Life Ins. Co. v. Newark, supra:
... The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise. L. Bamberger & Co. v. Division of Tax Appeals, supra (1 N.J. 151, at p. 159). And the taxpayer has not met this burden unless he has presented the appellate tribunal with sufficient competent evidence to overcome the presumption, that is, to establish a true valuation of the property at variance with the assessment. Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 175 (1952). [10 N.J. at 105]
And only when the presumption is overcome does it become incumbent upon the Tax Court to appraise the testimony, make a determination of true value and fix the assessment. Cf. *39 Samuel Hird & Sons, Inc. v. Garfield, 87 N.J. Super. 65, 75 (App.Div. 1965); Rek Investment Co. v. Newark, 80 N.J. Super. 552, 557 (App.Div. 1963).
The proofs in this case consist of: (a) the testimony of two experts, viz., Leo T. Souza for plaintiff taxpayer and George C. Harraka, tax assessor for appellant City of Summit, and (b) the written appraisal of each expert which was admitted in evidence. Our determination of this appeal does not require any extended consideration of all of the factors relied upon by the experts and the Tax Court judge in arriving at their valuations of the property. It is sufficient to note that while Leo Souza and the Tax Court judge purported to use the economic (income capitalization) approach to value, the approach which "should be of preponderant influence" in this case, involving as it does the valuation of apartment buildings, Parkview Village Asso. v. Collingswood, 62 N.J. 21, 23 (1972), each nonetheless commenced the process upon an untenable premise. Thus, we find the Tax Court judge accepting at the start of his calculations, and without question, as the "economic rent" for the garden apartment complex, the gross income estimate of $229,661 projected by plaintiff's expert for each of the tax years under review. This, despite the fact that Leo Souza, in his testimony and written appraisal, never established an "economic rent" for the property. He clearly explained, both in his testimony and his written appraisal, how he arrived at the $229,661 figure, which he termed "Effective Gross Income."
In his written appraisal, Exhibit P-1 in evidence, Souza listed the following "Background Data":
The property was acquired by the present owners, Rodwood Gardens, Inc. [a wholly owned subsidiary of Rosenthal and Rosenthal, Inc., Factors, from New York City] on July 1, 1976. The transfer of the property was in the form of a takeover of the property from its former owners, Josef and Hadassah Rosensaft for debts owed by Josef Rosensaft to Rosenthal and Rosenthal. The takeover which occurred upon the death of Josef Rosensaft also included two other apartment properties located in Plainfield, New Jersey.
During the period of the Rosensaft ownership of the property and through February of 1977, all three properties were professionally managed by Feist & Feist of Newark, New Jersey. During the period between mid-1975 up to March *40 of 1977, the operating income and expenses for all three properties (Summit and 2 Plainfield properties) were merged by the managing agents and thus were not individually available for the Summit property for that period of time. However, as of March 1, 1977, management of the property was taken over by the present owners who have kept individual records of the three properties and prepared annual statements on each. As a result, the application of the Income Approach to Value in this report was based on those income and expense figures which were available for six months of 1975, ten months of 1977, and twelve months each of 1978 and 1979. The 1976 income and expense figures were totally unavailable and the partial years of 1975 and 1977 were annualized to reflect a full year's income and expenses as shown in Exhibit "B".
Further on in the appraisal he pinpointed how he arrived at the $229,661 figure:
In processing the Income Approach, I have utilized as the gross annual income the average actual rental collections for the 4-year period 1975, 1977, 1978 and 1979. As noted under "Background Data:, the 1976 income and expense figures were not available and the 1975 and 1977 income and expenses were annualized (see Exhibit "B" schedule). This average annual collected income amounted to $228,830 for apartments and garages to which is added the actual average of $831 for sundry income for a total gross income of $229,661. There was no vacancy and credit loss allowance deducted from this amount since the very modest amount of vacancy and/or credit losses that were sustained during those periods are already reflected in that sum.
The following colloquy from the direct examination of Souza in the Tax Court lays bare the utter failure of the expert to even attempt to establish an economic rent which the apartments should command:
Q. Is your value substantially predicated then upon the economic or the income approach?
A. Yes it is.
Q. Now from where did you obtain the income and expense figures which you ultimately used in your capitalization procedure?
A. I obtained them from the accountant of the owner, Mr. Barnacle. There is a  a gap in time of relating to the assessment dates here in which there  excuse me  where there was no income and expense figures available. The reason for that being that during the period in 1975, about mid-1975 'til March 1 of 1977 the property was professionally managed by Feist and Feist of Newark, New Jersey. And while they were managing the property they were also managing two other properties which the owners of this property acquired at the same time, and they were managing them as a unit. And all of the expenses  income and expenses were merged and they were unable to break those income and expenses out for me because they were merged. And therefore I couldn't relate the income for the period around mid-'75 through February of 1977 to this property. So what I did is I considered the *41 income that was available, which was six months of 1975 which was the first six months, and ten months of 1977, then I also considered the 1978 and 1979 full year income and expenses in order to try to stablize the income and expenses for this apartment unit. Even though the 1979 income and expense figures post-dated the assessment date, or the last assessment date in question here today.
In the valuation of real property for local taxation, "[t]he search, of course, is for the fair value of the property, the price a willing buyer would pay a willing seller." New Brunswick v. Tax Appeals Div., 39 N.J. 537, 543 (1963). Adherence to objective standards for determining true value is required by Art. VIII, § I, par. 1, of the State Constitution of 1947, as well as by N.J.S.A. 54:4-23. As this court observed in Fort Lee v. Hudson Terrace Apts., 175 N.J. Super. 221, 226 (App.Div. 1980), certif. den. 85 N.J. 459 (1980), "the focus must be on the value of the property in the market place, without regard to the particular or peculiar circumstances of the owner." And, in using the economic (income capitalization) approach to value,
The first problem is to find the fair rental value to which the capitalization rate will be applied.... No doubt the fair rental value, rather than the actual rent payable under an existing lease, must control. [New Brunswick v. Tax Appeals Div., supra, 39 N.J. at 544]
As Judge Conford observed in his opinion for a unanimous court in Parkview Village Asso. v. Collingswood, supra:
It is of course settled that gross rental income for purposes of applying the capitalized income approach to valuation of property is to be taken at "fair rental value," professionally termed "economic" rent or income, if that differs from current actual rental. New Brunswick v. Tax Appeals Div., supra (39 N.J. at 544); American Institute of Real Estate Appraisers, The Appraisal of Real Estate (1967), p. 227 et seq.; International Association of Assessing Officers, Assessing and the Appraisal Process (4 ed. 1972), pp. 82, 172; Kahn, Case, Schimmel, Real Estate Appraisal and Investment (1963), p. 103 et seq.; Ring, The Valuation of Real Estate (1970), p. 208. However, actual income is a significant probative factor in the inquiry as to economic income. See McCrory Stores Corp. v. Asbury Park, 89 N.J. Super. 234, 243 (App.Div. 1965); Somers v. City of Meriden, 119 Conn. 5, 174 A. 184, 186 (Sup.Ct. 1934); People ex rel. Gale v. Tax Commission of City of New York, 17 A.D.2d 225, 233 N.Y.S.2d 501, 506-507 (App.Div. 1962), motion for leave to appeal denied, 12 N.Y.2d 646, 238 N.Y.S.2d 1026 [188 N.E.2d 529] (Ct.App. 1963); Assessing and the Appraisal Process, supra, at 82; Real Property Appraisal Manual for New Jersey Assessors (2 ed. 1963), p. 148.

*42 Checking actual income to determine whether it reflects economic income is a process of sound appraisal judgment applied to rentals currently being charged for comparable facilities in the competitive area. The essential, however, is a plurality of comparables, see The Appraisal of Real Estate, supra, at 235; Assessing and the Appraisal Process, supra, at 82, 172; Kahn, Case, Schimmel, supra, at 105. One authority suggests that if at least four comparable properties are properly analyzed, a basis for a reliable rent schedule for the subject apartment house may be made. Ring, supra, at 215. [62 N.J. at 29-30]
And, as pointed out in American Institute of Real Estate Appraisers, The Appraisal of Real Estate (7 ed. 1978):
A gross income estimate is basic to the income approach to a value indication, but since this estimate involves future projections, adequate and dependable current market research is basic to the gross income estimate. The future cannot be forecast with certainty, but trends can be analyzed and current market actions can be identified which affect future income expectancies. Appraisal practice requires that appraisers study and identify important supply and demand relationships. Such analyses are critical to income forecasting and evaluation of risks.
The starting point in a gross income projection is the record of actual gross income from the property in past years and the current income schedule. This historic and current factual data provides a basis from which a projection of estimated future gross income may be developed. However, this projected gross income estimate for appraisal purposes may be quite different from actual past or current figures. In the review and analysis of the factual data, comparison is made with known rentals for similar space in the same or comparable locations. This analysis leads to an informed estimate of the probable prospective income from the property and the degree of risk involved in its realization. [at 325]
Here, by his own admissions, both in his testimony and in his written appraisal, Souza never did begin to utilize properly the accepted income capitalization approach to valuation of the property. Having no record of actual gross income from the garden apartment complex for any part of 1976, for six months of 1975, and for two months of 1977, he proceeded to ignore entirely the economic status of the property in 1976, "annualized" the income figures for "the partial years of 1975 and 1977," and then, by adding these "annualized" figures with the 1978 and 1979 income data and dividing by 4, obtained what he termed "the average actual rental collections for the 4-year period 1975, 1977, 1978, and 1979." This purely speculative "average," amounting to $229,661, was used by him as the "effective gross income" for each of the tax years 1976, 1977, *43 1978 and 1979. Beyond this, no concern appears to have been given to arriving at "an informed estimate of the probable prospective income from the property" by comparison of that resulting figure "with known rentals for similar space in the same or comparable locations." The Appraisal of Real Estate, supra.
In sum, there was, as the city properly notes, a failure on the part of plaintiff "to prove the fair rental value of the property as of October 1, 1975 and October 1, 1976 for the 1976 and 1977 tax appeals," and a "distorted and patently fallacious determination of value for 1978 and 1979 based on a net income of $140,000 when plaintiff's expert and only witness admitted the net income for 1978 and 1979 actually exceeded $170,000." It is obvious from the record before us that plaintiff failed to sustain the burden of proof which was cast upon it. It is equally obvious that the Tax Court, in substantially adopting plaintiff's bizarre method of valuation, and accepting as the "economic rent" for the property a figure projected by plaintiff's expert having no logical or plausible identification with "a fair rental value" which the apartment complex should command, was accordingly clearly in error.
Since no competent proof of valuation was submitted by plaintiff, the issue of discrimination was never properly before the Tax Court. It is axiomatic that before a taxpayer can proceed on the issue of discrimination he must first establish by competent independent proofs the true value of his property. In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 33-34 (1961). See, also, Tri-Terminal Corp. v. Edgewater, supra, 68 N.J. at 409-410; Fort Lee v. Hudson Terrace Apts., 175 N.J. Super. 221, 235-236 (App.Div. 1980), certif. den. 85 N.J. 459 (1980).
Since neither plaintiff nor the Tax Court judge made a proper determination of the value of the property for any of the four tax years, the presumption of correctness which attached to the county tax board judgments for 1976, 1977 and 1978 and that which attached to the 1979 assessment made by the local taxing authority, stands.
*44 The judgment of the Tax Court for the years 1976, 1977, 1978 and 1979, under review, is reversed. The matter is remanded to the Tax Court for the entry of judgment reinstating the original assessments for each of these tax years at:

 Land $239,400
 Improvements 585,600
 ________
 Total $825,000

We do not retain jurisdiction.