**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF**
**THE TAX COURT COMMITTEE ON OPINIONS**

| | | |
|---|---|---|
| BELMONT ASSOCIATES c/o CHASE BANK, | ) ) ) | TAX COURT OF NEW JERSEY DOCKET NO. 002766-2008 DOCKET NO. 003872-2009 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TOWNSHIP OF FRANKLIN, | ) ) | |
| Defendant. | ) ) | |
| CORE PROPERTIES, | ) ) | TAX COURT OF NEW JERSEY DOCKET NO. 002938-2010 |
| Plaintiff, | ) ) ) | DOCKET NO. 006885-2011 DOCKET NO. 005534-2012 |
| v. | ) ) | DOCKET NO. 002329-2013 DOCKET NO. 001533-2014 |
| TOWNSHIP OF FRANKLIN, | ) ) | DOCKET NO. 001806-2015 |
| Defendant. | ) ) ) | OPINION |

Decided:  January 15, 2020

Henry La Cap, Esq., and Michael A. Hazen, Esq.
(Janata, La Cap & Hazen, LLP, attorneys) for plaintiffs

Gregory B. Pasquale, Esq., and Jose Rivera-Benitez, Esq.
(Shain Schaffer, P.C., attorneys) for defendant

DeALMEIDA, J.T.C. (t/a)

This is the court's opinion after trial in the above-referenced matters challenging the local property tax assessment on a parcel of real property in Franklin Township, Somerset County, for tax years 2008 through 2015.  For the reasons explained more fully below, the court will enter judgments lowering the assessment on the property for each tax year at issue.

## I. Findings of Fact

The subject property, commonly known as 130 Belmont Drive, is designated in the records of the municipal tax assessor as Block 528.04, Lot 19.31. The approximately five-acre parcel is improved with a one-story, single-tenant, Class C office building constructed in 1974. The building is average quality concrete block with a stone-panel facade. The interior is comprised of 50,176 square feet of office space with an average finish. The interior is largely open space suitable for cubicles, but also includes walled offices, a conference room, cafeteria, and adequate restrooms. A 3000-square-feet, roughly U-shaped area in the center of the building has a raised floor designed to accommodate computers. The raised floor is obsolete, but the space remains useable. The structure is in average to good condition with no unusual features. The exterior improvements include a parking lot with 120 spaces, adequate for the building, as well as an auxiliary power source. The building has a single entrance from the parking lot.

The subject property is close to two Interstate 287 interchanges in a zone that allows light manufacturing, industrial, and office uses. The neighborhood is composed largely of office buildings similar to the subject property, as well as light industrial buildings. The parcel is in the Brunswick/Piscataway Route 287 office market, a subset of the central New Jersey office market.

As of October 1, 2007, the first valuation date, Chemnetwork Processing Services, Inc., (Chemnetwork) a subsidiary of Chase Bank, operated the property as a data center supporting Chase Bank retail branches. It is not clear if Chemnetwork owned the property on that date.

On February 19, 2010, plaintiff Core Properties, LLC (Core) obtained title to the subject property from Chemnetwork for $3,080,000. An entity related to Core Properties occupies the subject property through a lease agreement. The tenant uses the property as a data center.

For tax year 2008, the subject property was assessed as follows:

| | |
|---|---|
| Land | $ 781,500 |
| Improvement | $3,518,500 |
| Total | $4,300,000 |

For tax year 2009, the subject property was assessed as follows:

| | |
|---|---|
| Land | $1,503,000 |
| Improvement | $6,117,000 |
| Total | $7,620,000 |

Each year for tax years 2010 through 2015, the subject property was assessed as follows:

| | |
|---|---|
| Land | $1,503,000 |
| Improvement | $4,235,000 |
| Total | $5,738,000 |

Because the municipality implements a district-wide reassessment annually, the Chapter 123 average ratio for each tax year is 100% and the assessments are presumed to reflect true market value. See N.J.S.A. 54:51A-6(d). There were no physical changes or improvements at the subject property that would explain the fluctuation in the assessments from tax year 2008 to tax year 2010.

Belmont Associates (Belmont) filed complaints challenging the assessments on the property for tax years 2008 and 2009. The record contains no evidence explaining Belmont's ownership interest, if any, in the subject property. The witnesses referred to Belmont as a subsidiary of Chase Bank. The October 21, 2009 purchase agreement and February 19, 2010 deed state Chemnetwork is the property owner. The court need not clarify Belmont's ownership interest in the subject property on the filing dates because it is clear the owner of the property seeks a reduction in the assessments, and the complaints identify the property by block, lot, and location. Prime Accounting Dep't v. Twp. of Carney's Point, 212 N.J. 493, 508 (2013).

Core Properties filed complaints challenging the assessments for tax years 2010 through 2015. The municipality filed a counterclaim seeking to raise the assessments only for tax years 2009 and 2010. The matters were consolidated and tried over three days.

Each party presented an expert real estate appraiser who offered an opinion of the true market value of the subject property on the relevant valuation dates. Their opinions of value are summarized as follows:

| Tax Year | Valuation Date | Plaintiffs' Expert | Defendant's Expert |
|----------|----------------|--------------------|--------------------|
| 2008 | 10/1/2007 | $3,225,000 | $6,210,000 |
| 2009 | 10/1/2008 | $3,100,000 | $5,900,000 |
| 2010 | 10/1/2009 | $3,000,000 | $5,690,000 |
| 2011 | 10/1/2010 | $3,080,000 | $5,860,000 |
| 2012 | 10/1/2011 | $3,175,000 | $6,240,000 |
| 2013 | 10/1/2012 | $3,200,000 | $6,240,000 |
| 2014 | 10/1/2013 | $3,250,000 | $6,440,000 |
| 2015 | 10/1/2014 | $3,300,000 | $6,670,000 |

II.  Conclusions of Law

The court's analysis begins with the well-established principle that "assessments . . . are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). As Judge Kuskin explained, our Supreme Court has defined the parameters of the presumption as:

> [t]he presumption attaches to the quantum of the tax assessment. Based on this presumption the appealing taxpayer has the burden of proving that the assessment is erroneous. The presumption in favor of the taxing authority can be rebutted only by cogent evidence, a proposition that has long been settled. The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be "definite, positive and certain in quality and quantity to overcome the presumption."
>
> [Ibid. (quoting Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985)).]

4

The presumption of correctness arises from the view "that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law." Pantasote, 100 N.J. at 413 (citing Powder Mill I Assocs. v. Twp. of Hamilton, 3 N.J. Tax 439, 235 (Tax 1981)); see also Byram Twp. v. W. World, Inc., 111 N.J. 222, 235 (1988). This presumption remains "in place even if the municipality utilized a flawed valuation methodology, so long as the quantum of the assessment is not so far removed from the true value of the property or the method of assessment itself is so patently defective as to justify removal of the presumption of validity." Transcon. Gas Pipe Line Corp. v. Twp. of Bernards, 111 N.J. 507, 517 (1988).

"The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Twp. of Little Egg Harbor v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998); see City of Atl. City v. Ace Gaming, LLC, 23 N.J. Tax 70, 98 (Tax 2006). "In the absence of a R. 4:37-2(b) motion . . . the presumption of validity remains in the case through the close of all proofs." MSGW Real Estate Fund, 18 N.J. Tax at 377. In making the determination of whether the presumption has been overcome, the court should weigh and analyze the evidence "as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves), employing the evidentiary standard applicable to such a motion." Ibid. The court must accept as true the proofs of the party challenging the assessment and accord that party all legitimate favorable inferences from that evidence. Id. at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995)). In order to overcome the presumption, the evidence "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" W. Colonial Enters., LLC v. City of E. Orange, 20 N.J. Tax 576,

579 (Tax 2003) (quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div. 2000)), aff'd, 21 N.J. Tax 590 (App. Div. 2004).

Only after the presumption is overcome with sufficient evidence at the close of trial must the court "appraise the testimony, make a determination of true value and fix the assessment." Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38 (App. Div. 1982). If the court determines that sufficient evidence to overcome the presumption has not been produced, the assessment shall be affirmed and the court need not proceed to making a value determination. Ford Motor Co. v. Twp. of Edison, 127 N.J. 290, 312 (1992); Glob. Terminal & Container Servs. v. City of Jersey City, 15 N.J. Tax 698, 703-04 (App. Div. 1996).

The court concludes the opinions of value offered by plaintiffs' expert, which were based on an accepted methodology for determining value and on evidence of the type often used for such determinations, if accepted as true, raise doubt in the court's mind with respect to whether the assessments on the subject property exceeded its true market value for the tax years in question. As noted above, plaintiffs' expert opined the subject property's true market value was significantly below the assessment on the property for each tax year. Thus, the presumption of correctness attached to assessments has been overcome.

The court's inquiry, however, does not end here. Once the presumption is overcome, the "court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co., 127 N.J. at 312 (quotation omitted). "[A]lthough there may have been enough evidence to overcome the presumption of correctness at the close of plaintiff's case-in-chief, the burden of proof remain[s] on the taxpayer throughout the entire case . . . ." Id. at 314-15 (citing Pantasote, 100 N.J. at 413).

6

A.    Highest and Best Use.

A determination of true market value requires a determination of the property's highest and best use on the relevant valuation dates.  See Clemente v. Twp. of S. Hackensack, 27 N.J. Tax 255, 267-69 (Tax 2013), aff'd, 28 N.J. Tax 337 (App. Div. 2015).  Both experts opined the highest and best use of the subject property on the relevant valuation dates was its continued use for rental to a single occupant as office space.  The court finds the experts' opinions on this point to be credible and adopts their proffered highest and best use conclusions.

B.    Approaches to Valuation.

"There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the comparable sales method, capitalization of income and cost."  Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div. 2001) (citing Appraisal Institute, The Appraisal of Real Estate 81 (11th ed. 1996)).  "There is no single determinative approach to the valuation of real property." 125 Monitor St., LLC v. City of Jersey City, 21 N.J. Tax 232, 237-38 (Tax 2004) (citing Samuel Hird & Sons, Inc. v. City of Garfield, 87 N.J. Super. 65, 72 (App. Div. 1965); ITT Cont'l Baking Co. v. Twp. of E. Brunswick, 1 N.J. Tax 244 (Tax 1980)), aff'd, 23 N.J. Tax 9 (App. Div. 2005). "The choice of the predominant approach will depend upon the facts of each case and the reaction of the experts to those facts."  Id. at 238 (citing City of New Brunswick v. Div. of Tax Appeals, 39 N.J. 537 (1963); Pennwalt Corp. v. Twp. of Holmdel, 4 N.J. Tax 51, 61 (Tax 1982)).

The comparable sales approach "usually provides the primary indication of market value in appraisals of properties that are not usually purchased for their income-producing characteristics."  Appraisal Institute, The Appraisal of Real Estate 419 (12th ed. 2001).  This method of valuation has been defined as "[a] set of procedures in which a value indication is

7

derived by comparing the property being appraised to similar properties that have been sold recently, applying appropriate units of comparison, and making adjustments to the sales prices of the comparables based on the elements of comparison." Id. at 417.

The income capitalization approach is the preferred method of estimating the value of income producing property. Parkway Vill. Apartments Co. v. Twp. of Cranford, 108 N.J. 266, 270 (1987); Hull Junction Holding Corp. v. Borough of Princeton, 16 N.J. Tax 68, 79 (Tax 1996). "In the income capitalization approach, an appraiser analyzes a property's capacity to generate future benefits and capitalizes the income into an indication of present value." Appraisal Institute, The Appraisal of Real Estate 445 (13th ed. 2008). This approach generally applies to real property that generates income from the rental of the property, not from the business activities that take place at the property.

The cost approach is normally relied on to value special purpose property or unique structures for which there is no market. Borough of Little Ferry v. Vecchiotti, 7 N.J. Tax 389, 407 (Tax 1985); Dworman v. Borough of Tinton Falls, 1 N.J. Tax 445, 452 (Tax 1980), aff'd, 180 N.J. Super. 366 (App. Div. 1981). The cost approach "involves a replication, through the use of widely accepted cost services . . . of the cost of the components of the building to be valued, less . . . depreciation[s]." Gale & Kitson Fredon Golf, LLC v. Twp. of Fredon, 26 N.J. Tax 268, 283 (Tax 2011) (alteration in original) (quotation omitted). "A cost approach has two elements – land value and the reproduction or replacement cost of the buildings and other improvements." Int'l Flavors & Fragrances, Inc. v. Borough of Union Beach, 21 N.J. Tax 403, 417 (Tax 2004). Depreciation from all causes is deducted from the reproduction cost new. Depreciation is defined as a loss in value from three causes: physical depreciation, functional obsolescence, and external economic factors. The cost approach is most effective when the property being valued is new, in light of the

8

difficulties in accurately estimating the various components of depreciation. See Worden-Hoidal Funeral Homes v. Borough of Red Bank, 21 N.J. Tax 336, 338 (Tax 2004).

Plaintiffs' expert relied on both the income capitalization approach and the comparable sales approach to determine true market value. Defendant's expert used only the income capitalization approach to reach his opinions of true market value. In light of the court's determination that the subject property's highest and best use is for rental to a single user, the court concludes the income capitalization approach is the most credible method for determining the subject property's true market value.

The court finds, however, that the 2010 sale of the subject property is credible evidence of its true market value for tax years 2010 and 2011. "It is well established that the price established by an arms-length sale of a property is probative of its fair market value." Passarella v. Twp. of Wall, 22 N.J. Tax 600, 603 (App. Div. 2004). "Indeed, the sales price of a property may be the best indicator of its true value in some circumstances." Ibid. (citing Glen Wall Assocs. v. Twp. of Wall, 99 N.J. 265, 282 (1985); Hackensack Water Co. v. Div. of Tax Appeals, 2 N.J. 157, 162 (1949); Romulus Dev. Corp. v. Town of W. New York, 7 N.J. Tax 305, 316-18 (Tax 1985), aff'd o.b., 9 N.J. Tax 90 (App. Div. 1987)). A post valuation date sale of the subject property is probative and may be afforded great weight if it is within a few months of the assessment date. Glenn Wall Assocs., 99 N.J. at 283; Orient Way Corp. v. Twp. of Lyndhurst, 27 N.J. Tax 361 (Tax 2013), aff'd, 28 N.J. Tax 272 (App. Div. 2014).

Undisputed evidence in the record establishes the property had been marketed for sale through a broker for over a year prior to the sale. Plaintiffs' expert testified the agreement to purchase, executed on October 21, 2009, was reached after an arms' length negotiation and that the purchase price reflected true market value.

9

Defendant's expert, on the other hand, opined the sale is not probative of the property's true market value. He admitted, however, he did not investigate the sale. He speculated Chemnetwork, as the subsidiary of a bank, was not interested in obtaining full value for the property because its business was banking, not real property investment. In addition, he testified there was turmoil in the national economy at the time of the sale, and the grantor of the subject property, while relatively strong, had recently absorbed other institutions and was seeking efficiencies through consolidation of its operations. He further speculated maximizing the sale price of the property may not have been a priority for the grantor. The court rejects the testimony of defendant's expert on this point as lacking in credibility. He offered no evidence to support his opinion the sale was not probative of the subject property's true market value.

The municipal tax assessor marked the sale as non-usable for purposes of the Director, Division of Taxation's ratio study. This designation reflects the assessor's determination the sale price is not a reliable indicator of market value. In making this decision, the assessor relied on code "26," which signifies a lack of reliability "for reasons other than specified in the enumerated categories" in N.J.A.C. 18:12-1.1(a) because the sale is "not considered to be between a willing, knowledgeable buyer, not compelled to buy, and a willing, knowledgeable seller, not compelled to sell . . . ." N.J.A.C. 18:12-1.1(a)(26). In addition, the assessor noted "sale from bank (grantor)" on the form rejecting the sale.

The tax assessor did not testify and no evidence explaining the rationale for his decision is in the record. To the extent the seller's corporate relationship to a bank might be relevant, N.J.A.C. 18:12-1.1(a)(31) allows a "[f]irst sale after foreclosure by a Federal-or State-chartered financial institution" to be designated as non-usable for the Director's ratio study. That regulation is not

10

applicable here.  The court rejects the assessor's designation of the sale as lacking in probative value.[1]

C.      Calculation of Value Using the Income Capitalization Approach.

Determining the value of real property pursuant to the income capitalization approach can be summarized as follows:

$$
\begin{array}{rl}
 & \text{Market Rent} \\
\text{x} & \underline{\text{Square Footage}} \\
 & \text{Potential Gross Income} \\
\\
\text{-} & \underline{\text{Vacancy and Collection Losses}} \\
 & \text{Effective Gross Income} \\
\\
\text{-} & \underline{\text{Operating Expenses}} \\
 & \text{Net Operating Income} \\
\\
\div & \underline{\text{Capitalization Rate}} \\
 & \text{Value of Property}
\end{array}
$$

See Spiegel v. Town of Harrison, 19 N.J. Tax 291, 295 (App. Div. 2001), aff'g, 18 N.J. Tax 416 (Tax 1999); Appraisal Institute, The Appraisal of Real Estate 466 (13th ed. 2008).

1.      Market Rent.

"Central to an income analysis is the determination of the economic rent, also known as the 'market rent' or 'fair rental value.'"  Parkway Vill. Apartments Co., 108 N.J. at 270.  This differs from the actual rent realized on the property, which may be below market rates.  Parkview Vill. Assocs. v. Borough of Collingswood, 62 N.J. 21, 29-30 (1972).  However, actual income is a significant probative factor in the inquiry as to economic income.  Id. at 30.  "Checking actual income to determine whether it reflects economic income is a process of sound appraisal judgment applied to rentals currently being charged for comparable facilities in the competitive area."  Ibid.

---

[1]  The form completed by the assessor to mark the sale as non-usable states the floor area of the property is 9950 square feet, casting further doubt on the accuracy of the assessor's determination.

Plaintiffs' expert relied on thirteen leases he deemed to be for space comparable to the subject property. The leases spanned the period January 2006 to January 2015. Each lease is of space in Class A, B, or C office building in the Brunswick/Piscataway Route 287 office market. Four of the comparable leases are in Franklin Township, including one of a building across the street from the subject property.

There are two types of rental rates common in the office rental market: (1) triple net rent, with the tenant paying all but a few expenses for operating the building, see N.J. Indus. Props., Inc. v. Y.C. & V.L., Inc., 100 N.J. 432, 434 (1985); and (2) modified gross rent, with the tenant paying no expenses except tenant electric charges, see Amer. Cyanamid Co. v. Twp. of Wayne, 17 N.J. Tax 542, 572 (Tax 1998), aff'd, 19 N.J. Tax 46 (App. Div. 2000). While plaintiffs' expert recognized office space generally is leased to a single user on triple net basis, his search of the market revealed mostly comparable leases based on modified gross rent. He therefore reached his opinion of value based on modified gross leases from which he then deducted market expenses.[2]

Plaintiffs' expert adjusted the modified gross rents in his comparable leases for changes in the market, size, and quality and condition of the buildings. After making the adjustments, he opined adjusted modified gross rents from $13.50 per square foot to $16.39 per square foot. He ultimately opined the following market gross rents for the subject property:

| | |
|---|---|
| Tax year 2008 | $14.50 p/s/f |
| Tax year 2009 | $14.50 p/s/f |
| Tax year 2010 | $14.25 p/s/f |
| Tax year 2011 | $14.25 p/s/f |
| Tax year 2012 | $14.50 p/s/f |
| Tax year 2013 | $14.50 p/s/f |
| Tax year 2014 | $14.75 p/s/f |
| Tax year 2015 | $15.00 p/s/f |

---

[2] All but two of the expert's comparable leases reflect modified gross rent. The remaining two comparable leases reflect triple net rents. For those leases, plaintiffs' expert developed expenses for the relevant properties to convert the triple net rents to modified gross rents.

Defendants' expert relied on sixteen leases, all of which reflect triple net rents. The expert did not limit his search to the Brunswick/Piscataway Route 287 market, identifying comparable leases for space as far from the subject property as Morris County. He testified that an expanded search was necessary to locate comparable leases with triple net rents, as such leases are less common than those with modified gross rents. The expert acknowledged that one comparable lease included in the rent the cost of fixtures and infrastructure improvements for a data center. Based on the building owner's estimate of the cost of those improvements, the expert adjusted the rental rate in the lease to reflect rent of only the office space.

Defendant's expert made adjustments to the rents in his comparable leases. The adjustments included modest market adjustments for the first two tax years, and adjustments for size and quality of the office space for all tax years. When making the quality adjustments, defendant's expert considered the subject property to be on the "cusp" of being a Class A/B property. Based on the adjusted rents, the expert opined a market rent of $12.50 on a triple net basis for each tax year.

The court concludes that the market rents offered by plaintiffs' expert are credible and supported by market data. The court finds to be credible the comparable leases on which plaintiffs' expert based his opinion. In addition, the court finds credible the adjustments applied by plaintiffs' expert. Of note, the court finds the subject property is a Class C office building and rejects the opinion of defendant's expert, upon which some of his adjustments were based, that the building is on the "cusp" of being Class A/B. The evidence in the record demonstrates the subject property is of average quality and condition with characteristics and amenities inferior to a Class A or Class B office building. The court, therefore, adopts the modified gross rental rates opined by plaintiffs' expert as market rates for the subject property.

2.      Building Size.

The parties agree the subject property has 50,176 square feet of rentable office space.  The court is in accord with this agreement.

3.      Vacancy and Collection Rate.

A determination of value under the income-capitalization approach must include "a vacancy and loss allowance over the economic life of the property, using, in some measure, the actual history, but placing more emphasis on the trends in the most recent years."  First Republic Corp. of Am. v. Borough of E. Newark, 16 N.J. Tax 568, 580 (Tax 1997), aff'd, 17 N.J. Tax 531 (App. Div. 1998).  "The important principle implicated in the estimate of a vacancy and loss allowance is that the estimate is simply the appraiser's informed judgment of the long-term quality and durability of the income stream."  Ibid.  As Judge Crabtree explained:

> [The] determination involves more than uncritical acceptance of the vacancy rates prevailing in the subject on the valuation dates or, for that matter, the office building vacancy rates prevailing in the subject's market area.  Rather, a vacancy allowance must be predicated on an estimate of the long-term quality and durability of the rental income stream.
>
> [Univ. Plaza Realty Corp. v. City of Hackensack, 12 N.J. Tax 354, 369 (Tax 1992), aff'd, 264 N.J. Super. 353 (App. Div. 1993).]

Both experts offered a vacancy and collection rate of fifteen percent for each tax year.  The court finds this vacancy and collection rate to be reasonable.

4.      Operating Expenses.

Because plaintiffs' expert opined market modified gross rent for the subject property, he also opined market expenses.  He reviewed published surveys of the expenses incurred by other property owners, a common tool in the real estate industry for estimating expenses.  In addition, he had access to information from property owners obtained by his firm for past appraisals.

14

Defendant's expert did not opine market expenses because he offered an opinion of market rent on a triple-net basis. The court finds credible the operating expenses opined by plaintiffs' expert.

5.      Capitalization Rate.

The capitalization rate is an "income rate for a total real property interest that reflects the relationship between a single year's net operating income expectancy and the total property price or value . . . ." Appraisal Institute, The Appraisal of Real Estate 462 (13th ed. 2008). The capitalization rate is "used to convert net operating income into an indication of overall property value." Ibid.

Both experts reviewed investor surveys and the Band of Investment technique to calculate an overall capitalization rate. The Band of Investment technique "is a form of 'direct capitalization' which is used 'to convert a single year's income estimate into a value indication.' The technique includes both a mortgage and an equity component." Hull Junction Holding, 16 N.J. Tax at 80-81 (quoting Appraisal Institute, The Appraisal of Real Estate 467 (10th ed. 1992)).

> Because most properties are purchased with debt and equity capital, the overall capitalization rate must satisfy the market return requirements of both investment positions. Lenders must anticipate receiving a competitive interest rate commensurate with the perceived risk of the investment or they will not make funds available. Lenders generally require that the loan principal be repaid through periodic amortization payments. Similarly, equity investors must anticipate receiving a competitive equity cash return commensurate with the perceived risk, or they will invest their funds elsewhere.
>
> [Appraisal Institute, The Appraisal of Real Estate 505 (13th ed. 2008).]

In "using the Band of Investment technique, it is incumbent upon the appraiser to support the various components of the capitalization rate analysis by furnishing 'reliable market data . . . to the court as the basis for the expert's opinion so that the court may evaluate the opinion.'" Hull

Junction Holding, 16 N.J. Tax at 82 (quoting Glen Wall Assocs., 99 N.J. at 279-80. "For these purposes, the Tax Court has accepted, and the Supreme Court has sanctioned, the use of data collected and published by the American Council of Life Insurance." Id. at 82-83. "Relevant data is also collected and published by . . . Korpacz Real Estate Investor Survey." Id. at 83. "By analyzing this data in toto, the court can make a reasoned determination as to the accuracy and reliability of the mortgage interest rates, mortgage constants, loan-to-value ratios, and equity dividend rates used by the appraisers." Ibid.

The experts opined similar capitalization rates, although the rates offered by plaintiffs' expert reflected local property taxes. Defendant's expert did not include local property taxes in his capitalization rates because he opined the tenant would be responsible for the taxes. The court accepts as credible the capitalization rates offered by plaintiffs' expert, which are supported by the market data on which he relied.

6.      Calculation of Value.

Having accepted the elements of plaintiffs' expert's analysis under the income capitalization approach, the court also finds credible the values resulting from employing those elements in the standard formula for that approach, with one modification. While the court rejected the comparable sale approach, it found the February 19, 2010 sale of the subject property, which was agreed to in an October 2009 contract, probative of value. The $3,080,000 sales price is corroborative of the opinions of value offered by plaintiffs' expert. The court, however, has adjusted the values offered by plaintiffs' expert for tax years 2010 and 2011 to reflect the sales price. The court did not consider in its analysis the expert's opinions of value reached under the comparable sales approach.

The court concludes the true market value of the subject property on the relevant valuation dates was as follows:

| | |
|---|---|
| Tax year 2008 | $3,200,000 |
| Tax year 2009 | $2,970,000 |
| Tax year 2010 | $3,080,000 |
| Tax year 2011 | $3,080,000 |
| Tax year 2012 | $3,160,000 |
| Tax year 2013 | $3,200,000 |
| Tax year 2014 | $3,260,000 |
| Tax year 2015 | $3,350,000 |

D.      Applying Chapter 123.

1.      Tax Year 2008.

Because the municipality implemented a district-wide reassessment for each tax year at issue, the ratio analysis set forth in N.J.S.A. 54:51A-6(a), commonly known as Chapter 123, does not apply. N.J.S.A. 54:51A-6(d). The assessment on the subject property, therefore, will be set at 100% of value for each tax year. A Judgment establishing the assessment for the subject property for tax year 2008 will be entered as follows:

| | |
|---|---|
| Land | $   781,500 |
| Improvement | $2,418,500 |
| Total | $3,200,000 |

2.      Tax Year 2009.

A Judgment establishing the assessment for the subject property for tax year 2009 will be entered as follows:

| | |
|---|---|
| Land | $   781,500 |
| Improvement | $2,188,500 |
| Total | $2,970,000 |

17

3.  Tax Year 2010.

A Judgment establishing the assessment for the subject property for tax year 2010 will be entered as follows:

| | |
|---|---|
| Land | $  781,500 |
| Improvement | $2,298,500 |
| Total | $3,080,000 |

4.  Tax Year 2011.

A Judgment establishing the assessment for the subject property for tax year 2011 will be entered as follows:

| | |
|---|---|
| Land | $  781,500 |
| Improvement | $2,298,500 |
| Total | $3,080,000 |

5.  Tax Year 2012.

A Judgment establishing the assessment for the subject property for tax year 2012 will be entered as follows:

| | |
|---|---|
| Land | $  781,500 |
| Improvement | $2,378,500 |
| Total | $3,160,000 |

6.  Tax Year 2013.

A Judgment establishing the assessment for the subject property for tax year 2013 will be entered as follows:

| | |
|---|---|
| Land | $  781,500 |
| Improvement | $2,418,500 |
| Total | $3,200,000 |

7.      Tax Year 2014.

A Judgment establishing the assessment for the subject property for tax year 2014 will be entered as follows:

| | |
|---|---|
| Land | $  781,500 |
| Improvement | $2,478,500 |
| Total | $3,260,000 |

8.      Tax Year 2015.

A Judgment establishing the assessment for the subject property for tax year 2015 will be entered as follows:

| | |
|---|---|
| Land | $  781,500 |
| Improvement | $2,568,500 |
| Total | $3,350,000 |