190 N.J. Super. 85 (1983)
461 A.2d 1210
FIRST REAL ESTATE INVESTMENT TRUST OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF HASBROUCK HEIGHTS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1983.
Decided June 21, 1983.
*86 Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Howard T. Rosen argued the cause for appellant (Rosen, Gelman & Weiss, attorneys; Ralph W. Chandless, on the initial brief; Howard T. Rosen, of counsel, and William J. Balcerski, on the supplemental letter brief).
Nicholas W. Mulick argued the cause for respondent (Klein, Chapman, Chester, DiIanni, Greenburg, Henkoff & Siegel, attorneys; Nicholas W. Mulick on the brief).
The opinion of the court was delivered by MILMED, P.J.A.D.
The Borough of Hasbrouck Heights (Borough) appeals from a judgment of the Tax Court concerning the local property assessment for the year 1976 on certain real property of respondent First Real Estate Investment Trust of New Jersey.
The property, situated at 160 Terrace Avenue in Hasbrouck Heights, consists of a plot of land approximately 78 feet by 229 feet, improved with a three-story brick apartment building built in 1939 that contains 20 apartment units and a floor of drive-in garages. For the tax year 1964 the property was assessed at values established in the Borough's 1963 revaluation program, *87 viz, land $21,800, improvements $220,100, for a total of $241,900. Following a sale of the property for $200,000 in 1964, the assessment on the improvements was, in accord with a stipulation of settlement of an appeal taken by the taxpayer, reduced from $220,100 to $178,200, resulting in a total assessment of $200,000. For each of the ensuing years, up to and including the 1976 tax year under review, the Borough assessed the property at the same values:

 Land $ 21,800
 Improvements 178,200
 ________
 Total $200,000

On the taxpayer's appeal, the 1976 assessment was initially reviewed and sustained by the Bergen County Board of Taxation. The judgment of the county board was appealed by the taxpayer to the Division of Tax Appeals, now the Tax Court.
The matter was heard in the Tax Court. The proofs consisted of the testimony of two experts  Barry Barkan for the plaintiff-taxpayer and Kenneth Cantoli, tax assessor for defendant Borough  and the written appraisals of the experts which were admitted in evidence. Barkan, relying exclusively on what he referred to as "the income approach for valuation," testified in essence that the gross income estimate that he used in this approach was the 1975 "gross rents of the 20 apartment units [which] was reported at $48,964." He did so without making any attempt to determine what he termed the "market potential," or economic rent, for the units. His reasoning seems to be that since "the community was under rent stabilization" it was not necessary for him to find the "fair rental value" of the property, "professionally termed `economic' rent or income," Parkview Village Assoc. v. Collingswood, 62 N.J. 21, 29 (1972), to which a proper capitalization rate could be applied, because the rents in this case were "not free to be ... increased to higher market potential."[1] For the same reason, he "did not engage in *88 an analysis of sales of apartments in Hasbrouck Heights" to determine what, if any, "recognizable trend" in the value of such property was prevalent in the Borough. With the $48,964 rent figure as his base, he projected a total property valuation of $246,400, and applied to that his "unweighted, unclassified ratio" of 43.73 percent which he arrived at from his own "sales ratio study" and which he preferred "to application of the Director's Ratio," to "show an indicated assessment for the 1976 tax year of $107,800." Cantoli's valuations, using all three of the traditional methods, i.e., the cost approach, the market data approach, and the income approach, resulting in a valuation of $369,000, were "rejected in toto" by the judge of the Tax Court who presided at the hearing. At the close of the proofs, the judge reserved decision. In a letter opinion which followed, he noted that
While there is no doubt that economic rent or fair market rental, if it differs from actual or contract rent, must control in the economic approach to value, New Brunswick v. Division of Tax Appeals [39 N.J. 537, 544 (1963)], in this instance where, because of the artificially imposed ceilings on rental income through the rent control ordinance, a search for economic or fair market rentals would be futile.
He thereupon accepted "as gross income the actual rents received by the taxpayer," made some minor adjustments in the calculations of the taxpayer's expert, arrived at a total value of $257,116 which he "reduced to the 43.73% level," and directed the entry of judgment grounded on these calculations and fixing the assessments for 1976 as follows:

 Land $ 21,800
 Improvements 90,700 (rounded)
 ________
 Total $112,500

*89 This appeal by the Borough followed.
In the matter before us, plaintiff, the appellant in the Tax Court, had the burden of ultimate persuasion to upset the judgment of the Bergen County Board of Taxation for the tax year 1976. Rodwood Gardens, Inc. v. Summit, 188 N.J. Super. 34, 38 (App.Div. 1982). It clearly failed to sustain that burden. Both the taxpayer's expert and the Tax Court judge who adopted that witness's gross income estimate failed to follow well-settled principles of law governing the valuation and assessment of real property for taxation. Both overlooked the underlying purpose of the income capitalization approach to value, i.e.,
Regardless of what procedures are used to develop the economic income projection, the objective is a reasonable estimate of the rent that the property would command, for the foreseeable future, if the space were currently available for rent in the open market. This prospective gross income estimate (before provision for vacancy and possible rental collection loss) is also referred to as gross rental or potential annual gross income.
Translating this income estimate to a value indication is an appraisal procedure, but this procedure cannot produce a satisfactory conclusion unless the starting point is a logical estimate of the probable quantity of future income. [American Institute of Real Estate Appraisers, The Appraisal of Real Estate (7 ed. 1978) at 328.]
Both the taxpayer's expert and the Tax Court judge failed to recognize the fact that "[a] major consideration in estimating a gross income projection involves rental comparisons." Id. at 335.
As Judge Conford observed in his opinion for a unanimous court in Parkview Village Assoc. v. Collingswood, supra:
It is of course settled that gross rental income for purposes of applying the capitalized income approach to valuation of property is to be taken at "fair rental value," professionally termed "economic" rent or income, if that differs from current actual rental. New Brunswick v. State of N.J. Div. of Tax Appeals [39 N.J. 537, 544 (1963)]; American Institute of Real Estate Appraisers, The Appraisal of Real Estate (1967), p. 227 et seq.; International Association of Assessing Officers, Assessing and the Appraisal Process (4 ed. 1972), pp. 82, 172; Kahn, Case, Schimmel, Real Estate Appraisal and Investment (1963), p. 103 et seq.; Ring, The Valuation of Real Estate (1970), p. 208. However, actual income is a significant probative factor in the inquiry as to economic income. See McCrory Stores Corp. v. Asbury Park, 89 N.J. Super. 234, 243 (App.Div. 1965); Somers v. City of Meriden, 119 Conn. 5, 174 A. 184, 186 (Sup.Ct. 1934); People ex *90 rel. Gale v. Tax Commission of City of New York, 17 A.D.2d 225, 233 N.Y.S.2d 501, 506-507 (App.Div. 1962), motion for leave to appeal denied, 12 N.Y.2d 646, 238 N.Y.S.2d 1026 [188 N.E.2d 529] (Ct.App. 1963); Assessing and the Appraisal Process, supra, at 82; Real Property Appraisal Manual for New Jersey Assessors (2 ed. 1963), p. 148.
Checking actual income to determine whether it reflects economic income is a process of sound appraisal judgment applied to rentals currently being charged for comparable facilities in the competitive area. The essential, however, is a plurality of comparables, see The Appraisal of Real Estate, supra, at 235; Assessing and the Appraisal Process, supra, at 82, 172; Kahn, Case, Schimmel, supra, at 105. One authority suggests that if at least four comparable properties are properly analyzed, a basis for a reliable rent schedule for the subject apartment house may be made. Ring, supra, at 215. [62 N.J. at 29-30.]
And, as pointed out in The Appraisal of Real Estate, supra:
A gross income estimate is basic to the income approach to a value indication, but since this estimate involves future projections, adequate and dependable current market research is basic to the gross income estimate. The future cannot be forecast with certainty, but trends can be analyzed and current market actions can be identified which affect future income expectancies. Appraisal practice requires that appraisers study and identify important supply and demand relationships. Such analyses are critical to income forecasting and evaluation of risks.
The starting point in a gross income projection is the record of actual gross income from the property in past years and the current income schedule. This historic and current factual data provides a basis from which a projection of estimated future gross income may be developed. However, this projected gross income estimate for appraisal purposes may be quite different from actual past or current figures. In the review and analysis of the factual data, comparison is made with known rentals for similar space in the same or comparable locations. This analysis leads to an informed estimate of the probable prospective income from the property and the degree of risk involved in its realization. [At 325.]
Here there obviously was no concern given by plaintiff's expert to arriving at "an informed estimate of the probable prospective income from the property" by comparison of the rentals therefrom "with known rentals for similar space in the same or comparable locations." Ibid. He merely equated current actual rental with economic rent because of the Borough's rent stabilization ordinance while offering no proof whatever to establish whether the $44,645 gross annual rentals for 1973, the year immediately preceding the adoption of the Borough's rent stabilization ordinance and only 21 months before the October 1, 1975 assessment date, was the then fair rental value, i.e., the economic rent for the property, or a lesser rental value maintained *91 to satisfy particular circumstances of the owner. As the Borough properly suggests, in valuing apartment property for assessment by the income capitalization approach in a municipality having a rent stabilization ordinance, attention should be given to any built-in tax shelter aspects "since this may influence the price that an investor would [be willing] to pay" for the property.[2]
Adherence to objective standards for determining true value is required by N.J. Const. (1947), Art. VIII, § I, par. 1 as well as by N.J.S.A. 54:4-23. Rodwood Gardens, Inc. v. Summit, supra, 188 N.J. Super. at 41. Shortcuts which eliminate basic investigative appraisal techniques cannot be condoned. As we observed in Fort Lee v. Hudson Terrace Apts., 175 N.J. Super. 221, 226 (App.Div. 1980), certif. den. 85 N.J. 459 (1980), "the focus must be on the value of the property in the market place, without regard to the particular or peculiar circumstances of the owner."
Since plaintiff failed to submit competent proof of valuation, the issue of discrimination was never properly before the Tax Court. As we noted in Rodwood Gardens, Inc. v. Summit, supra,
It is axiomatic that before a taxpayer can proceed on the issue of discrimination he must first establish by competent independent proofs the true value of his property. In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 33-34 (1961). See, also, Tri-Terminal Corp. v. Edgewater [68 N.J. 405, 409-410 (1975), cert. den. 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976)]; Fort Lee v. Hudson Terrace Apts., 175 N.J. Super. 221, 235-236 (App.Div. 1980), certif. den. 85 N.J. 459 (1980). [188 N.J. Super. at 43.]
Nonetheless, from our review of the record we are satisfied that plaintiff did not meet the Kents criterion, viz, that "[a] taxpayer who seeks a reduction of an assessment below true value must prove that his share of the total tax burden substantially exceeds the share allocated to others generally." In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 33 (1961). See also *92 Tri-Terminal Corp. v. Edgewater, 68 N.J. 405, 412 (1975), cert. den. 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976).
Since neither plaintiff nor the Tax Court judge made a proper determination of the value of the property for the 1976 tax year, the presumption of correctness which attached to the county tax board judgment for that year stands.
The judgment of the Tax Court for the year 1976 under review is reversed. The matter is remanded to the Tax Court for the entry of judgment reinstating the original assessments for said tax year at:

 Land $ 21,800
 Improvements 178,200
 ________
 Total $200,000

We do not retain jurisdiction.
NOTES
[1] The initial rent stabilization ordinance adopted in 1974 defined "fair rental" as the prevailing rental applicable to each dwelling unit in the Borough as of June 30, 1973. After 12 months, increases of up to 7 1/2 percent in each 12 month period could be had. Additionally, "[e]xtreme hardship" increases could be applied for. The 7 1/2 percent permissible increase was changed to six percent by amendment in 1975. There is nothing in the record to indicate that plaintiff ever applied for "hardship" relief.
[2] See Internal Revenue Code provisions 26 U.S.C.A. § 856 et seq. and Federal Tax Regulations § 1.856-1 et seq., applicable to qualified Real Estate Investment Trusts in 1975.