BIANCO, J.T.C.
Pursuant to R. 2:5-1 (b), this opinion amplifies and supplements the court’s bench opinion of November 22, 2002, in which the court, upon reconsideration, affirmed the dismissal of plaintiffs complaints pursuant to R. 4:37-2(b), after plaintiff had presented its case and rested. Plaintiff filed a Notice of Appeal with the Superior Court, Appellate Division on December 16, 2002 (Docket No. A-1950-1275).
Plaintiff West Colonial Enterprises (“West Colonial”) initially brought the underlying complaints before the Essex County Board of Taxation, where they were dismissed without prejudice. On appeal to the Tax Court, West Colonial contested its local property *578 taxes for the 2001 and 2002 tax years. The appeals concerned West Colonial’s property located along South Munn Avenue, in the City of East Orange, County of Essex, designated by the taxing district as Lot 36 in Block 221 (“subject property”). The subject property was assessed for the 2001 and 2002 tax years as follows:
Land $ 161,000
Improvement $490,300
TOTAL $651,300
The trial was held on October 7 and October 8 of 2002. At the close of West Colonial’s proofs, defendant City of East Orange (“East Orange”) moved to dismiss the case pursuant to R. 4:37-2(b). The court granted East Orange’s motion after determining that West Colonial failed to meet its burden of proof. Subsequently, West Colonial moved for reconsideration pursuant to R. 4:49-2, asking the court to vacate its order dismissing the complaints. Oral argument for reconsideration was heard on November 22, 2002. Under the standard set forth in Cummings v. Bahr, 295 N.J.Super. 374, 685 A.2d 60 (App.Div.1996), the court finds that reconsideration is warranted in the interests of justice, to review the facts and reasoning that led the dismissal the complaints upon East Orange’s motion pursuant to R. 4:37-2(b).
To successfully appeal a property tax assessment, a taxpayer must first overcome the presumption of the validity of the assessment. See Glen Wall Assocs. v. Wall Tp., 99 N.J. 265, 491 A.2d 1247 (1985). A taxpayer can do this by offering evidence of the true value of the property. In order to overcome the presumption, and move forward with its ease, the taxpayer’s evidence “must be based on sound theory and objective data, rather than on mere wishful thinking.” MSGW Real Estate Fund, LLC v. Mountain Lakes Bor., 18 N.J.Tax 364, 376 (Tax 1998). If the municipality moves to dismiss at the close of th'e taxpayer’s proofs pursuant to R. 4:37-2(b), the court, in deciding whether the aforementioned burden has been met, must accept all of taxpayer’s proofs as true and accord the taxpayer all legitimate *579 inferences, which can be deduced from the evidence. Ibid. (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 666 A.2d 146 (1995)). However, the evidence, when viewed under the foregoing evidentiary standard, must be “sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.” Lenal Props., Inc. v. City of Jersey City, 18 N.J.Tax 405, 408 (Tax 1999), aff'd 18 N.J.Tax 658 (App.Div.2000), certif. denied, 165 N.J. 488, 758 A.2d 647 (2000). Moreover, the Tax Court has held:
Consequently, if the defendant does not move to dismiss at the conclusion of plaintiffs proofs pursuant to R. 4:37-2(b), then, at the conclusion of trial, the court, before proceeding to decide the appeal based on weighing and analysis of the evidence, must first determine whether the presumption of validity has been overcome. In making this determination, the court should view the evidence as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves), employing the evidentiary standard applicable to such a motion.
[MSGW Real Estate Fund, supra, 18 N.J.Tax at 377.]
Pursuant to MSGW Real Estate Fund, the court would have to determine whether or not West Colonial met its burden, regardless of whether East Orange moved to dismiss. If the court determines that West Colonial did not meet its burden, then dismissal of the case is appropriate in accordance with R. 4:40-1, without making a determination of value.
Under any scenario, this court finds that West Colonial simply did not meet its required burden of proof.
At trial, West Colonial presented the testimony of a real estate appraiser who qualified to testify as an expert witness (“expert”). The expert prepared an appraisal report for the subject property. The expert described the subject property as a 1.56-acre site containing a ten-story, 132-unit apartment building, including twelve basement apartments that West Colonial characterized as illegal. The subject property is utilized as an apartment building complex. The expert indicated that the subject property’s use is non-conforming because only 93 units are permitted on the 1.56-acre site. However, the multi-residential aspect of the use is appropriate and permitted. The expert also concluded that the *580 highest and best use for the subject property, as vacant, is for low density residential development. He questioned the long term viability of the existing development but concluded that the current use is an appropriate interim use and that demolition of the improvements is not warranted at this time.
The expert testified that the building is well managed, but there is a high amount of rent and collection losses. In addition, the City of East Orange has rent control regulations in effect, which limit the amount of rent that can be charged in an apartment building.[1]
The expert used the income approach to value the subject property. A comparable sales analysis, prepared by the expert and included in his appraisal report, was not presented as evidence. Initially, the expert testified that, based on rents current as of July 2002, and not on rents pertinent to the assessment dates for the tax years at issue (i.e. Oct. 1, 2000 and Oct. 1, 2001), he calculated a potential gross income (“PGI”) range of $1,015,000 to $1,040,000 assuming full occupancy for 118 apartments.[2] He determined from the current rents that there is monthly potential rental income of $79,868 with nine vacant apartments. Annualizing this reflects an annual potential rental income of $958,416. After adding in the potential rent from the nine vacant apartments, the PGI reflected by the current rents is $1,023,216.
According to the expert’s testimony, he did not have 2000 or 2001 rents available to him, but instead used the current rents to get an idea of what PGI might be for the actual years in question. The expert testified that he did examine rent registries[3] for the *581 years in question, but stated that he did not use that information in his valuation of the subject property. He offered no comparable leases to support his PGI range.
The expert did not include the twelve basement apartments in his valuation analysis. According to the expert, he was advised that when West Colonial purchased the subject property in July 1996, the seller indicated the basement apartments were illegal. Based on his general knowledge of the law and what was told to him, the expert concluded that the apartments were illegal and should not be included in his appraisal report for purposes of valuing the property.
Based upon the expert’s initial testimony as to how he determined PGI, this court, for the reasons set forth below, simply cannot accept the asserted PGI range for the tax years in question, determined solely from rental data relevant to a tax year not in question. Furthermore, the expert never adequately explained, based solely upon his analysis of the current rents discussed above, just how he arrived at the high and low ends of his determined PGI range. However, the expert’s later testimony indicates that in determining the range of PGI, he did not rely solely on the current rents but rather, he calculated the effective gross income (“EGI”)[4] first, and then worked backwards.
The expert stated that he used the actual 2000 and 2001 rental income taken from West Colonial’s tax returns for those years to determine the EGI of the subject property. Actual income reported was $803,000 and $813,000 for 2000 and 2001 respectively. The expert then advanced those figures by 4% in 2000 and 5% in 2001 to account for rent control regulations to produce EGI totals of $835,000 in 2000 and $853,000 in 2001.
The expert testified that he calculated a 17.7% vacancy and collection loss allowance[5] for the 2001 tax year, although this *582 figure does not appear in his appraisal report. In arriving at this figure, the expert stated that he conducted a vacancy survey. He went door-to-door in about 21 different buildings in the area where the subject property is located. According to the expert, this survey indicated a 17% vacancy rate plus some abandonment in the neighborhood. He also looked at demographics based on census data, which indicated a 10% vacancy rate. Additionally, the municipal assessor told the expert in 1998 that East Orange contained 27,000 household units with 354 apartment buildings. Based on that information, the door-to-door survey, and the demographic analysis, the expert concluded that there were many more available rental-housing units than there were household units.
Taking the EGI of $835,000 and adding to that a 17.7% vacancy and collection loss allowance, the expert determined that GPI for 2001 was $1,015,000[6] (i.e. the lower limit of his GPI range). For the 2002 tax year, he calculated a 16% vacancy and collection loss allowance by taking the difference between the same $1,015,000 PGI and the EGI of $853,000.[7] The court notes that by using a 17.7% vacancy and collection loss allowance in 2002, added to the $853,000 EGI for that year, produces PGI near the upper limit of the expert’s PGI range,[8] which seems to explain how he arrived at that number.
The expert’s income capitalization analysis is clearly flawed and demonstrates a misunderstanding of the basic premise of the income approach to value. In Harclay House v. East Orange *583 City, 18 N.J.Tax 564 (Tax 2000), aff'd, 344 N.J.Super. 296, 781 A.2d 1085 (App.Div.2001), certif. denied, 171 N.J. 338, 793 A.2d 716 (2002), the Tax Court held that, “[t]he standard method for calculating value based on the income method is to calculate [EGI] by subtracting a vacancy and rent loss allowance from adjusted scheduled rent.” Harclay House, supra, 18 N.J.Tax at 569 (citing Appraisal Institute, The Appraisal of Real Estate 8, 482-90 (11th ed.1996)). Here, the expert did not follow that standard method. Instead, he based a range for PGI, in part, on rents that would be relevant to a 2003 appeal, but not to the 2001 and 2002 tax years in question. He then determined EGI simply by using the actual rental income figures from West Colonial’s income tax returns for the relevant years. Then, he basically took the difference to calculate a vacancy and collection loss allowance, although there is some independent support for 17.7% allowance for 2001. Working backwards, he added the vacancy loss allowance and the EGI for each year to establish PGI.
In Harclay House, supra, the Tax Court addressed which method of determining EGI was the most reliable. Id. at 568. The taxpayer’s appraisal expert used the actual collected income from the subject property to determine the EGI. Id. at 567. The municipality’s expert determined EGI by calculating an adjusted monthly rental income based on the rent roll from the appropriate year. Then, he multiplied the monthly rent by twelve months and calculated an annual PGI of $897,187. Finally, he subtracted a vacancy and collection loss allowance, and added additional income form parking. Id. at 567-568. In making its determination, the Tax Court held:
It is of course settled that gross rental income for purposes of applying the capitalized income approach to valuation of property is to be taken at “fair rental value,” professionally termed “economic” rent or income, if that differs from current actual rental. However, actual income is a significant probative factor in the inquiry as to economic income.
Checking actual income to determine whether it reflects economic income is a process of sound appraisal judgment applied to rentals currently being charged for comparable facilities in the competitive area. The essential, however, is a plurality of comparables. One authoiity suggests that if at least four comparable properties are properly analyzed, a basis for a reliable rent schedule for the subject apartment house may be made. The reason for requiring a reasonable number of compara *584 bles is obvious. Postulating that the economic rent for property A is X dollars per unit (rather than X minus Y, which A is now charging) on the basis of the mere fact that assumedly similar property B is charging X dollars simply begs the question as to which of the two, if either, is charging economic rent. What is missing is a sufficient sampling of comparable area rents to provide a reliable criterion. The argued unavailability of a sufScient number of comparables cannot overcome the Ipasic defect of relying on only one.
[Harclay House, supra, 18 N.J.Tax at 568 (quoting Parkview Village Assocs. v. Collingswood, 62 N.J. 21, 29-30, 297 A.2d 842, 846-847 (1972)) (emphasis added) (citations omitted).]
In the absence of convincing evidence to the contrary the current ongoing income scale of a large, well-managed apartment project.. .functioning as customary with leases of relatively short length, should be deemed prima facie to represent its fair rental value for purposes of the capitalized income method of property valuation.
[Id at 568 (quoting Parkview, supra, 62 N.J. at 34, 297 A.2d at 849).]
The Tax Court recognized in Harclay House that, “[t]he Supreme Court cited, and quoted with approval, Parkview and several other eases in reaffirming the principle that in the absence of contrary evidence, annualized actual rents are the economic rent of a property.” Harclay House, supra, 18 N.J.Tax at 568-69 (citing Parkway Village Apts. Co. v. Cranford Tp., 108 N.J. 266, 528 A.2d 922 (1987)). However, the Tax Court further noted that,
[I]n each of those cases cited by our Supreme Court in Parkway Village, supra, the courts used actual rent rolls to conclude a[PGI] and then subtracted a market vacancy and rent loss allowance. Those courts did not, as plaintiff would have me believe, use actual collected rents in arriving at [EGI]. To do so without confirming that the actual rents were market rents and the actual vacancy and rent loss were market vacancy and, rent loss would value the leased fee of the subject property as opposed to the fee simple interest.
[Harclay House, supra, 18 N.J.Tax at 569 (citing Appraisal Institute, The Appraisal of Real Estate, supra at 8, 137-38, 535 and Harclay House at 567 n. 1) (emphasis added).]
In Harclay House, supra, the Tax Court concluded that the taxpayer failed to overcome the presumption of correctness of the assessment because its expert’s analysis failed to demonstrate that actual rents received were economic rents and its expert’s implicit vacancy and rent loss allowance was not a realistic long-term rate. Id. at 572. The Tax Court concluded, therefore, that it should not *585 find value in that case and affirmed the assessment pursuant to R. 4:40-1[9]
Similarly, in the present case, while West Colonial’s expert did, to some extent, use actual rents to determine PGI, those rents were only for the current year. For reasons never adequately explained, he did not have relevant rental data available to him to calculate PGI for the 2001 and 2002 tax years. He simply applied the current year rents to the tax years at issue. Furthermore, the expert made no attempt to show that the current rents were indicative of PGI for tax years 2001 and 2002. The expert simply equated the actual collected rénts in 2000 and 2001 with EGI. He made no attempt to confirm that those actual rents were market or economic rents. “Checking actual income to determine whether it reflects economic income is a process of sound appraisal judgment applied to rentals currently being charged for comparable facilities in the competitive area. ” Rodwood Gardens, Inc. v. City of Summit, 188 N.J.Super. 34, 42, 455 A.2d 1136, 1141 (App.Div.1982) (quoting Parkview, supra, 62 N.J. at 29, 297 A.2d at 846) (emphasis added).
Critical to the failure of the expert’s analysis is the fact that he did not offer any comparable leases to support his conclusions. This court finds in the present case precisely what the Appellate Division found in First Real Estate Inv. Trust v. Hasbrouck *586 Heights Bor., 190 N.J.Super. 85, 461 A.2d 1210 (App.Div.), certif. denied, 95 N.J. 202, 470 A.2d 423 (1983):
Here there obviously was no concern given by [the] expert to arriving at “an informed estimate of the probable prospective income from the properly” by comparison of the rentals therefrom “with known rentals for similar space in the same or comparable locations.” He merely equated current actual rental with economic rent ... while offering no proof whatever to establish whether the [actual] gross annual rentals for 1973 [ (the year under appeal) ], ... was the then fair rental value, ie., the economic rent for the property, or a lesser rental value maintained to satisfy particular circumstances of the owner.
[First Real Estate, supra, 190 N.J.Super. at 90-91, 461 A.2d at 1213 (citation omitted).]
Furthermore, the court notes that the existence of a rent control ordinance does not eliminate or lessen the standard of proof necessary to establish the economic rent of a rental property. Ibid.
Adherence to objective standards for determining true value is required by N.J. Const. (1947), Art. VIII, § I, par. 1 as well as by N.J.S.A. 54:4-23. Shortcuts which eliminate basic investigative appraisal techniques cannot be condoned---“[T]he focus must be on the value of the property in the market place, without regard to the particular or peculiar’ circumstances of the owner.”
[Id. at 91, 461 A.2d at 1214 (citations omitted).]
Additionally, the court rejects the expert’s representation that the Subject Property is well managed. The court’s conclusion in this regard is not based on the expert’s testimony, but rather on the testimony of the property manager.
Particularly damaging to the property manager’s credibility were his responses to questions concerning the twelve basement apartments that he characterized as illegal. Since West Colonial purchased the subject property in 1996, he was always of the understanding that the basement apartments were illegal. Still, he testified that at least one tenant has lived in one of those apartments without paying rent since before West Colonial acquired the subject property. He further testified that employees of contractors working on the building occupied some of the illegal apartments from time-to-time. The property manager stated that those occupants do not pay rent. The court finds it difficult to accept that no rent or other consideration is paid for allowing these individuals to occupy some of the basement apartments. *587 Furthermore, the sound judgment and business acumen of the property manager is clearly called into question when he admittedly allows strangers to occupy apartments that he believes are illegal — for free no less. The property manager’s responses to questions were often times evasive and not forthcoming. The court finds his testimony unconvincing and untrustworthy.
In ruling on East Orange’s motion to dismiss pursuant to R. 4:37 — 2(b), this court must apply the standards of proof to West Colonial’s case as enunciated by our Supreme Court. Therefore, the court must accept all of West Colonial’s proofs as true and accord it all legitimate inferences, which can be deduced from the evidence. MSGW Real Estate Fund, supra, 18 N.J.Tax at 376 (quoting Brill v. Guardian Life Ins. Co., supra, 142 N.J. at 535, 666 A.2d 146). When viewed under the foregoing evidentiary standard, this court finds that West Colonial’s evidence is not “sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.” Lenal Props., supra, 18 N.J.Tax at 408. West Colonial has failed to establish a debatable question as to the correctness of the assessment.
At trial, this court granted East Orange’s motion to dismiss the complaints pursuant to R. 4:37-2(b). Upon reconsideration, for the reasons set forth above, this court’s Order dismissing the complaints pursuant to R. 4:37-2(b) shall stand. West Colonial’s motion to vacate that Order is denied.

 According to the expert's testimony, only a 4% per annum increase is allowed for existing apartments and a one time 5% increase is allowed for an apartment under “vacancy decontrol.” He further stated that an apartment can only be considered for vacancy decontrol if the entire building is renovated.

 The expert excluded the 12 basement apartments, the superintendent’s apartment, and one apartment used as an office.

 A rent registry is usually submitted by the owner to the municipality for rent control purposes. It indicates the maximum allowable rent for each unit.

 EGI = PGI less a vacancy and collection loss allowance.

 Plaintiffs expert testified that the vacancy loss was approximately 7.7 % as indicated in ihe July 2002 rent roll. Additionally, plaintiffs expert testified that *582 the 10% collection loss was due primarily to a high degree of turnover, a high rate of people "skipping out on the rent,” and a high amount of eviction actions.

 $835,000 -4- .823 = $1,014,580.80 (say $1,015,000). Note: 100% — 17.7% vacancy/collection loss = 82.3% (or .823).

 $1,015,000 — $853,000 = $162,000 (or 15.96% of $1,015,000, say 16%).

 $853,000 -f- .823 = $1,036,452 (using a 17.7% vacancy/collection loss allowance instead of 16% produces PGI close to the expert's upper PGI range limit of $1,040,000).

 The standard for determining a motion for judgment under R. 4:40-1 is the same as that governing the determination of a motion for involuntary dismissal under R. 4:37-2(b); that is the court must accept as true all evidence which supports the position of the party defending against the motion and must accord him the benefit of all legitimate inferences which can be deducted therefrom, and if reasonable minds could differ, the motion must be denied. See Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706, 707-708 (1969). Since the standard under both rules is the same, a Barclay House analysis that addressed R. 4:40-1, is also applicable and controlling to this case that concerns R. 4:37-2(b). It is also noted that although Barclay House was decided at the close of all evidence (plaintiff’s and defendant’s), this court can find no reason why the outcome would have been different had the municipality simply moved to dismiss the case at the close of the taxpayer’s proofs. Had the municipality in Harclay House been willing to stand on its assessment, it would have been an exercise in futility to have forced it to present its case.