TAX COURT OF NEW JERSEY



**Kathi F. Fiamingo**
**Judge**

153 Halsey Street, 8th Floor
P.O. Box 47025
Newark, New Jersey 07101
Tel: (973) 648-2921 Fax: (973) 648-2149

NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

November 13, 2018

John C. Penberthy, III, Esq.
113 White Horse Road West, Suite 2
Voorhees, New Jersey 08043

Eileen K. Fahey, Esq.
7A North Main Street, Suite 1
Post Office Box 212
Medford, New Jersey 08055

>      Re:      James and Donna Cook v. Bordentown Township
>      Docket No. 010020-2017

Counsel:

This letter constitutes the court's opinion following trial in the above-referenced matter challenging the 2017 tax year assessment on the plaintiffs' single-family residence. For the reasons stated more fully below, the court affirms.

### I.      Procedural History and Factual Findings

The court makes the following findings of fact and conclusions of law based on the evidence and testimony offered at trial in this matter.

James and Donna Cook ("plaintiffs") are the owners of the single-family home located at 56 Hogback Road, in the Township of Bordentown, County of Burlington and State of New Jersey. The property is identified on the tax map of the Township of Bordentown as Block 27,

*

Lot 10.01 (the "subject property"). For the 2017 tax year, the subject property was assessed as follows:

|  |  |
|---|---|
| Land: | 224,000 |
| Improvements: | 151,600 |
| Total | 375,600 |

Plaintiffs filed a petition of appeal challenging the 2017 tax year assessment on the subject property with the Burlington County Board of Taxation, which affirmed the assessment. Plaintiffs subsequently filed a timely appeal of the county board judgment with the Tax Court. The Township did not file a counterclaim.

Only plaintiffs offered the testimony of a State of New Jersey certified general real estate appraiser, who was accepted without objection as an expert in the field of real estate valuation ("plaintiffs' expert"). The expert prepared an appraisal report, which was admitted into evidence without objection. The Township did not offer any testimony nor did it present an expert opinion at trial.

## II.    Description

The court finds that the subject property is a single-family home, built approximately 106 years ago. The home consists of a total of eight rooms, including four bedrooms and two full bathrooms, an unfinished basement containing 509 square feet, and an attached carport. The floors, walls, bath floor, doors are noted as being in average condition. City water and sewer are not available and the subject property is serviced by a well and cesspool for waste disposal. The latter is noted to have a holding tank of 300 gallons. The gross living area of the subject property is 2,133 square feet.

The subject property is located in an R-40, low density single family, zone and is noted as in compliance. The subject property consists of approximately 7.39 acres, it has 305 feet of

2

frontage along Hogback Road. The subject property is across the street from the Garden State Youth Correctional Facility, a New Jersey Department of Corrections state prison (the "DOC facility").

### III.   Conclusions of Law

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). "The appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985) (citing Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 174 (1952)). The evidence must be "definite, positive and certain in quality and quantity to overcome the presumption." MSGW Real Estate Fund, LLC., 18 N.J. Tax at 373.

The "presumption is not simply an evidentiary presumption serving only as a mechanism to allocate the burden of proof. It is, rather, a construct that expresses the view that in tax matters, it is to be presumed that governmental authority has been exercised correctly and in accordance with law." Id. at 374 (citing Powder Mill, I Assocs. v. Hamilton Township, 3 N.J. Tax 439 (Tax 1981)). "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Township v. Bonsangue, 316 N.J. Super. 271, 285–86 (App. Div. 1998). A taxpayer can only rebut the presumption by introducing "cogent evidence" of true value. That is, evidence "definite, positive and certain in quality and quantity." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 413 (quoting Aetna Life Ins. Co. v. Newark, 10 N.J. 99 (1952)). Therefore, at the close of plaintiff's proofs, the court must be presented with evidence that raises a "debatable question as to the validity of the assessment." Id. at 376.

The court, in evaluating whether the evidence presented meets the "cogent evidence" standard, "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." Ibid. (citing Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520 (1995)). However, the evidence presented, when viewed under the Brill standard "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters, LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003) (quoting Lenal Properties, Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div. 2000), certif. denied, 165 N.J. 488). "Only after the presumption is overcome with sufficient evidence . . . must the court 'appraise the testimony, make a determination of true value and fix the assessment.'" Greenblatt v. Englewood City, 26 N.J. Tax 41, 52 (Tax 2011) (quoting Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38–39 (App. Div. 1982)).

Here, defendant moved to dismiss at the close of plaintiffs' case. The court found that plaintiffs' expert and the facts upon which he relied, raised a debatable question regarding the correctness of the assessments. However, concluding the presumption of validity has been overcome does not equate to a finding by the court that the assessment is erroneous. Once the presumption has been overcome, "the court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co. v. Edison, 127 N.J. 290, 312. The court must be mindful that "although there may have been enough evidence [presented] to overcome the presumption of correctness at the close of plaintiff's case-in-chief, the burden of proof remain[s] on the taxpayer…to demonstrate that the judgment under review was incorrect." Id. at 314-15 (citing Pantasote Co., 100 N.J. at 413).

4

## IV. Valuation

"Whenever a market value opinion is developed, highest and best use analysis is necessary." Appraisal Institute, The Appraisal of Real Estate, 42 (14th ed. 2013); see also Ford Motor Co., 127 N.J. at 300–01. "Even the simplest valuation assignments must be based on a solid understanding of . . . the highest and best use of the real estate." Id. at 41. At a fundamental level, the value of a parcel of land is dependent upon use and should therefore "be examined for all possible uses" and the use "yield[ing] the highest return should be selected." Inmar Associates Inc. v. Township of Edison, 2 N.J. Tax 59, 64 (Tax 1980) (citing The Appraisal of Real Estate, at 43 (7th ed. 1978)).

Here, plaintiffs' expert testified and submitted in his report that the highest and best use of the subject property was residential. Through cross-examination, the expert noted that subdivision was possible but not ideal, and perhaps cost prohibitive, given the location of the subject property's cesspool and the requirement for a variance due to the limited frontage available. The report details the various factors that support the expert's conclusion and a summary of his of highest and best use analysis, albeit brief, was included in the appraisal report. The court accepts the appraiser's highest and best use as residential.

## V. Plaintiffs' Proofs

The plaintiffs' proofs were made up of the testimony and report of their expert appraiser. His report indicated that the market approach was employed due to the reliance on recent comparable sales. Plaintiffs' expert testified that he relied on six "comparables" in reaching his conclusion of value[1]. Neither the cost nor income approach was developed for his report. The

---

[1] Plaintiff's expert testified, and his report noted, that comparable "#6"was in fact a listing and at the time of his inspection of the subject property it had not sold or gone under contract. Accordingly the court will not consider this a comparable.

expert notes in his report that the cost approach was "judged to be unreliable due to the lack of recent land sales and of and of available single family building lots" in the area. Likewise, the income approach was deemed inappropriate due to lack of data and the minimal local rental market. The primary parameters for the search of comparables included properties in similar neighborhoods and properties with similar functional utility and appeal. To this end the appraiser selected comparables in and around Bordentown and Chesterfield Townships and specifically looked for those with similar bedroom count, age, and style.

The comparable sales chosen by plaintiffs' expert all occurred within an eighteen-month period preceding the valuation date and the sales prices ranged from a high of $250,000 to a low of $210,000. The adjusted sales prices ranged from $210,000 to $266,300. He reached a conclusion of value of $255,000 on the subject property.

Plaintiffs' expert testified that he attempted to locate comparable sales of property within a close proximity to a DOC facility but encountered difficulty. Indeed, he noted in his report that aside from the more urban setting of facilities in Trenton, NJ, the facility adjacent to the subject property is the only one that has proximate residential uses. The expert testified that comparable "#5" was selected due to its similarity to the subject property, being both similar in acreage and closeness to the DOC facility. Plaintiffs' expert did concede however that comparable "#5" was not exposed to the open market and that he was unable to find much information on the particulars of the improvement thereon. Nonetheless, in his report the expert notes that he found the sale "significant" and the sale was "given some weight."

The expert made gross adjustments to each of his comparable sales, ranging from 0.8% to 18%. The expert report notes that "some sales may have had superior or inferior updates" and "were adjusted accordingly for condition when necessary." He made living area adjustment at $67

6

per square foot. The expert report revealed that the comparable sales data used in his appraisal report was collected from the MLS, assessor records, and supported by interviews with local real estate agents.

Plaintiffs' expert testified that he made no explicit adjustment for the proximity of the DOC facility. On cross examination the expert was challenged on this, the defendant contending that he did in fact make an adjustment. The expert testified, and his report reflects, that while he did not make an itemized adjustment, the DOC facility's proximity pushed his conclusions to the lower end of the range. He noted again, the dearth of comparables with the same conditions.

However, despite the expert's testimony that there was no adjustment for proximity to the DOC facility and that his consideration was "quantitative" and not qualitative, it is clear from his report that an unexplained and undisclosed adjustment was made. In his narrative, the expert stated, "[s]ome comparables had inferior acreage. A trade-off of acreage for proximity to prison was taken and no adjustments for location, site, or view were made." Thus, the expert is stating that an adjustment for the proximity of the DOC facility was effected. Due to the other adjustments creating a washing out affect he chose, perhaps for the sake of brevity, to leave his numbers undisturbed. However, the quantification of the "trade-off" of acreage for proximity to the DOC facility was not presented to the court nor set forth in the report and the court cannot evaluate the credibility of the adjustment made by the expert.

"[D]ifferences between a comparable property and the subject property are anticipated. They are dealt with by adjustments **recognizing and explaining these differences**, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other." U.S. Life Realty Corp. v. Jackson Township, 9 N.J. Tax 66, 72 (1987) (emphasis added). The problem in the case at bar is the failure of the

plaintiffs' expert to fully recognize and explain the differences in his chosen comparables. The court is unable to determine with any certainty an estimate of value from the comparable of the subject property. Since the adjustment was made, but not quantified and disclosed, his estimate of value is unsupported and must be rejected.

The court acknowledges its obligation "to apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question." Glen Wall Associates v. Township of Wall, 99 N.J. 265, 280 (1985) (citing New Cumberland Corp v. Borough of Roselle, 3 N.J. Tax 345, 353 (Tax 1981)). In order to do so, however, the court must be presented with credible and competent evidence from which a finding of true value may be adduced. Plaintiffs failed to provide this court with competent evidence from which true value can be obtained.

## VI. Conclusion

The court affirms the judgment entered by the Burlington County Board of Taxation.

Very truly yours,

_____

Honorable Kathi F. Fiamingo

8