

**TAX COURT OF NEW JERSEY**

JOSHUA D. NOVIN
Judge

Dr. Martin Luther King, Jr. Justice Building
495 Dr. Martin Luther King, Jr. Blvd., 4th Floor
Newark, New Jersey 07102
Tel: (609) 815-2922, Ext. 54680

**NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS**

October 26, 2021

Michael W. C. Fourte, Esq.
212 Pompton Avenue
Verona, New Jersey 07044

Richard Conley, Esq.
100 Belvidere Avenue
Washington, New Jersey 07882

> Re: <u>Infinite Engineering Solutions, LLC v. Washington Borough</u>
> Docket Nos. 013509-2020

Dear Mr. Fourte and Mr. Conley:

This letter constitutes the court's opinion following trial of the above local property tax appeal. Infinite Engineering Solutions, LLC ("plaintiff") challenges the 2020 local property tax assessment on its mixed-use building located in Washington Borough ("Washington").

For the reasons stated more fully below, the court affirms the 2020 local property tax assessment.

## I.    Procedural History and Findings of Fact

Pursuant to <u>R.</u> 1:7-4, the court makes the following findings of fact and conclusions of law based on the evidence and testimony offered at trial.

Plaintiff is the owner of the three-story mixed-use building located at 28-30 East Washington Avenue, Washington Borough, Warren County, New Jersey. The property is identified on Washington's municipal tax map as Block 24, Lot 28 (the "subject property"). For the 2020 tax year, the subject property was assessed as follows:






Land:       $ 12,000
Improvement: $212,000
Total:       $224,000[1]

Plaintiff filed a Petition of Appeal ("Petition of Appeal") with the Warren County Board of Taxation (the "Board"), challenging the subject property's 2020 local property tax assessment. On October 28, 2020, the Board issued a Memorandum of Judgment affirming the 2020 tax assessment and bearing judgment code 2B, "Presumption of correctness not overturned" (the "Judgment").

On December 23, 2020, plaintiff filed a Complaint with the Tax Court challenging the Board's Judgment.

At the outset of trial, Washington moved for dismissal of plaintiff's Complaint, arguing that no appraisal report was submitted and objecting to any testimony from plaintiff's managing member, Amgad Khalil, regarding the subject property's sale. The court denied Washington's motion and placed a statement of reasons on the record.

During trial, Mr. Khalil offered testimony that plaintiff acquired the subject property and a nearby mixed-use building at 14-16 East Washington Avenue, Washington, New Jersey ("14-16 East Washington Avenue"), on or about October 22, 2019. Mr. Khalil stated during trial that a single Deed, reporting the total consideration paid for the two properties of $300,000, was recorded in the Warren County Clerk's Office.[2]

---

[1] Washington's average ratio of assessed to true value, commonly referred to as the Chapter 123 ratio, was 82.32% for the 2020 tax year. See N.J.S.A. 54:1-35a(a). When the average ratio is applied to the subject property's 2020 tax assessment, the implied equalized value of the property is $272,109.

[2] A copy of the Deed was not introduced during trial.






According to Mr. Khalil, the subject property consists of a ground-floor commercial unit and four apartments located above. Similarly, 14-16 East Washington Avenue also has a ground-floor commercial unit; however, it contains only two apartments above. Mr. Khalil stated that 14-16 East Washington Avenue's commercial unit is approximately twenty percent smaller than the subject property's commercial unit. Mr. Khalil further offered that 14-16 East Washington Avenue's apartments are larger than the subject property's apartments; however, Mr. Khalil was unfamiliar with their square footage and could not offer precise testimony as to the size variations.

Mr. Khalil testified that he is an experienced investor, having purchased dozens of other properties and having formerly been a New Jersey licensed real estate salesperson. He initially saw the subject property and 14-16 East Washington Avenue's listings on LoopNet and a multiple listing service and then contacted the listing broker about the properties.[3][4] Mr. Khalil expressed that his purchase of the subject property and 14-16 East Washington Avenue was an arms-length transaction, as the properties had been listed for sale for more than three hundred days.

During trial, Mr. Khalil identified the Contract for Sale of Real Estate he executed on plaintiff's behalf with Etienne Properties LLC (the "seller") in or about August 2019 for the subject property and 14-16 East Washington Avenue. Additionally, Mr. Khalil identified a Rider to Contract executed between plaintiff and seller in or about August 2019. Mr. Khalil testified that under the Rider, the seller requested that the parties allocate the $300,000 purchase price as follows: (i) $155,000 to the subject property; and (ii) $145,000 to 14-16 East Washington Avenue. However, Mr. Khalil could not explain and did not know how the allocation was arrived at.

---

[3] Plaintiff submitted a copy of the subject property's listing from the ColdwellBankerHomes.com website. A copy of 14-16 East Washington Avenue's listing was not furnished to the court.
[4] Mr. Khalil offered conflicting testimony during trial whether one real estate salesperson was involved in the transaction or two real estate salespersons were involved in the transaction.






According to Mr. Khalil, "this was a request from the seller, and I do not know . . . his rationale, to me at the end of the day, the mean price did not change, but he preferred the breakdown to be as such, actually, I should have thought about it a little bit more, . . . but we accepted the $155,000 for the 28-30." Moreover, Mr. Khalil testified that he did not obtain appraisal reports for either the subject property or 14-16 East Washington Avenue prior to his purchase to determine the accuracy of the purchase price allocation. Rather, Mr. Khalil surmised that maybe the size difference between the two commercial units was "why [seller] priced it as such."

In addition, questioning by the court revealed that the subject property was apparently offered for sale on the ColdwellBankerHomes.com website for $125,000, however, Mr. Khalil was unsure why the purchase price allocated to the subject property was $155,000. Additionally, Mr. Khalil could not recall the listing price for 14-16 East Washington Avenue. Importantly, Mr. Khalil did not know whether the seller had a mortgage either on the subject property or 14-16 East Washington Avenue; whether the seller had to obtain the approval of any mortgage lender; and whether the seller was under duress and had to sell the subject property and/or 14-16 East Washington Avenue.[5]

## II.  Conclusions of Law

As construed by applicable case law, a presumption of validity attaches to original tax assessments and county board of taxation judgments. MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998); Riverview Gardens, Section One, Inc. v. North Arlington, 9 N.J. 167, 174-175 (1952); Aetna Life Insurance Co. v. Newark City, 10 N.J.

---

[5]  Plaintiff did not submit a copy of the Seller's Residency Certification/Exemption, form GIT/REP-3 or the HUD-1 Settlement Statement from the closing of the subject property and 14-16 East Washington Avenue to enable the court to possibly ascertain if the sale was under duress or if the sale was a short sale transaction.






99, 105 (1952); Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985). The presumption "attaches to the quantum of the tax assessment. Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co., 100 N.J. at 413 (citing Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 174 (1952)). The presumption remains intact "even if the municipality utilized a flawed valuation methodology, so long as the quantum of the assessment is not so far removed from the true value of the property or the method of assessment itself is so patently defective as to justify removal of the presumption of validity." Transcontinental Gas Pipe Line Corp. v. Bernards Twp., 111 N.J. 507, 517 (1988).

However, the presumption is not an evidentiary device functioning "as a mechanism to allocate the burden of proof. It is, rather, a construct that expresses the view that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law." Pantasote Co., 100 N.J. at 413 (quoting Powder Mill, I Assocs. v. Hamilton Twp., 3 N.J. Tax 439 (Tax 1981)). The evidence presented must be "based on sound theory and objective data, rather than on mere wishful thinking." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376. A litigant can only surmount the presumption by introducing "cogent evidence" of true value. That is, evidence "definite, positive and certain in quality and quantity to overcome the presumption." Aetna Life Insurance Co., 10 N.J. 99, 105 (1952). Thus, the appealing party shoulders the burden of presenting the court with credible evidence "sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters, LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003) (quoting Lenal Properties, Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div. 2000), certif. denied, 165 N.J. 488 (2000)).






In the absence of a motion for judgment or involuntary dismissal, under R. 4:37-2(b), the court must nevertheless first decide whether the presumption of validity has been overcome before engaging in an evaluation and analysis of the evidence. MSGW Real Estate Fund, LLC, 18 N.J. Tax at 377. Only after the court has concluded that the presumption of validity has been "overcome with sufficient evidence . . . must the court 'appraise the testimony, make a determination of true value and fix the assessment'" based on a fair preponderance of the evidence. Greenblatt v. Englewood City, 26 N.J. Tax 41, 52 (Tax 2011) (quoting Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982)). If the court concludes the presumption of validity has not been overcome, in the absence of a counterclaim, the assessment must be affirmed, and the court need not make an independent determination of value. Ford Motor Co. v. Edison Twp., 127 N.J. 290, 312 (1992); Global Terminal & Container Serv. v. City of Jersey City, 15 N.J. Tax 698, 703-704 (App. Div. 1996).

The inquiry, under R. 4:40-1, requires the trial court to "accept as true all the evidence which supports the position of the party defending against the motion and accord him the benefit of all inferences which can reasonably and legitimately be deduced therefrom." Estate of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000) (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)) (citations and quotations omitted from original). In resolving such issue, the court must view the evidence presented as "uncontradicted" and accord the non-moving party the "benefit of all legitimate inferences" which can be deduced therefrom. Verdicchio v. Ricca, 179 N.J. 1, 30-32 (2004). See also MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376. Thus, the decision of the trial court turns upon an evaluation of the evidence presented.

Here, Mr. Khalil offered credible testimony that he acquired the subject property and 14-16 East Washington Avenue for $300,000 consideration on or about October 22, 2019. Moreover,






the court finds credible his testimony that only one Deed for both properties was delivered to him and recorded in the Warren County Clerk's Office.

However, plaintiff submits that the court should accept the purchase price allocated by the seller under the Contract for Sale of Real Estate as evidence of the subject property's true or fair market value. Notably, Mr. Khalil admitted on the record that this allocation was made entirely by the seller and that plaintiff made no independent investigation of the seller's legal basis, rationale, or justification for this allocation. Additionally, plaintiff did not engage an appraiser to test the accuracy of the purchase price allocation in the marketplace. Rather, Mr. Khalil was unconcerned with how the purchase price was allocated under the Rider to the Contract, provided that the overall sales price for both properties remained fixed at $300,000. Other than the joint sale of the subject property and 14-16 East Washington Avenue, plaintiff offered no other evidence of comparable mixed-use property sales as of the October 1, 2019 valuation date.

As stated above, before weighing the testimony and determining a property's true or fair market value, the appealing party must have first presented the court with credible evidence "sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters, LLC, 20 N.J. Tax at 579 (quoting Lenal Properties, Inc., 18 N.J. Tax at 408). However, in the absence of credible evidence of value, the assessment must be affirmed, and the court need not endeavor to determine a property's true value.

In the court's journey to determine a property's true value for tax assessment purposes, the focus of the inquiry is "the fair value of the property, the price a willing buyer would pay a willing seller." New Brunswick v. State of N.J. Div. of Tax Appeals, 39 N.J. 537, 543 (1963). The term market value has been defined as:






> the most probable price, as of a specified date, in cash or in terms equivalent to cash, or in other precisely revealed terms, for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.
>
> [Appraisal Institute, The Appraisal of Real Estate 58 (14[th] ed. 2013).]

Thus, although the sale of property is indicative of an exchange of consideration between parties, it may not be dispositive on the issue of true or fair market value. As expressed by our Supreme Court, "[t]here may be instances when the sale price may not reflect true market value. In such instances it is for the court to appraise the circumstances surrounding a sale to determine if there were special factors which affected the sale price without affecting the true value." Glen Wall Associates v. Wall Twp., 99 N.J. 265, 282 (1985). For the sale of a property to be a trustworthy and reliable indicator of fair market value, the following criteria must be met:

1) buyer and seller are typically motivated, and neither is under duress;
2) buyer and seller are well informed or well advised and are acting prudently, knowledgeably and in their respective self-interests;
3) the property has been reasonably exposed to an open, relevant and competitive market for a reasonable period of time;
4) the purchase price is paid in cash or its equivalent; and
5) the purchase price is unaffected by special or creative financing or by other special factors, agreements, or considerations.

See Venture 17, LLC v. Borough of Hasbrouck Heights, 27 N.J. Tax 108, 126 (Tax 2013); Hull Junction Holding Corp. v. Borough of Princeton, 16 N.J. Tax 68, 94 (Tax 1996)).

Here, although the court finds credible Mr. Khalil's testimony that the subject property and 14-16 East Washington Avenue were listed for sale and marketed on a multiple listing service, that is not the sole measure by which the court determines the true value of a property under appeal. Plaintiff lacked any knowledge and offered no evidence that the seller was typically motivated,






acting prudently, and not suffering from any duress. Admittedly, Mr. Khalil did not know whether the seller had any mortgages on the subject property or on 14-16 East Washington Avenue. Moreover, Mr. Khalil did not know whether this transaction was a short sale, requiring the seller to obtain the approval of its lender, or whether the seller was under duress and had to sell the subject properties. Most importantly, the allocated purchase price was seemingly arrived at capriciously and arbitrarily, without consideration of the subject property's actual true or fair market value. For example, the seller could have been unusually motivated to minimize its tax burden associated with the sale by allocating a lower portion of the purchase price to the subject property and a higher portion of the purchase price to 14-16 East Washington Avenue.

However, regardless of the seller's alleged motivations, the record is clear that the purchase price allocation was not arrived through arms-length negotiations between plaintiff and the seller based on market data, nor was it independently verified with an appraiser. In sum, the court concludes that insufficient evidence exists in the trial record to enable the court to determine the true or fair market value of the subject property, thereby establishing the existence of a debatable question as to the correctness of the subject property's assessment.

Accordingly, the court concludes that plaintiff has failed to overcome the presumption of validity that attaches to the subject property's local property tax assessment. Plaintiff has failed to prove, by a fair preponderance of the evidence, that the subject property's 2020 local property tax assessment exceeds its true market value. Therefore, the court shall enter judgment affirming the 2020 assessment.

Very truly yours,

/s/ Judge Joshua D. Novin, J.T.C.

Hon. Joshua D. Novin, J.T.C.

